John M. Nolan, NV Bar # 15790
Michael Langton, NV Bar # 290
Mark Mausert, NV Bar # 2398
729 Evans Avenue
Reno, Nevada 89512
Telephone: (775) 786-5477
jmnolan84@gmail.com
mlangton@sbcglobal.net
mark@markmausertlaw.com
*Attorneys for Plaintiff Lars Jensen*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LARS JENSEN, an individual,<br><br>*Plaintiff,*<br><br>v.<br><br>NATALIE BROWN, in her individual and official capacities as Administrative Officer at Truckee Meadows Community College; JULIE ELLSWORTH, in her individual and official capacities as Dean of Sciences at Truckee Meadows Community College; ANNE FLESHER, in her individual and official capacities as Dean of Math and Physical Sciences at Truckee Meadows Community College; KARIN HILGERSOM, in her individual and official capacities as President of Truckee Meadows Community College; MARIE MURGOLO, in her individual and official capacities as Vice President of Academic Affairs at Truckee Meadows Community College; MELODY ROSE, in her individual and official capacities as Chancellor of the Nevada System of Higher Education,<br><br>*Defendants.* | Case Number: 3:22-cv-00045-MMD-CLB<br><br>**FIRST AMENDED VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C § 1983**<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiff, LARS JENSEN, by and through counsel, and files this

Complaint for declaratory relief, monetary damages, costs, attorneys' fees, and any other relief to

which he is entitled as a victim of civil rights violations against Defendants Natalie Brown, Julie

Ellsworth, Anne Flesher, Karin Hilgersom, Marie Murgolo, and Melody Rose.  This is an action under 42 U.S.C. § 1983 to address Defendants violations of Plaintiff's First Amendment rights and procedural due process rights under the United States Constitution and Nevada Constitution. Plaintiff does hereby state and allege as follows:

## INTRODUCTION

1.      Two of the core principles of higher education are the protection of academic freedom and shared governance.  Academic freedom grants faculty the right and responsibility to search for truth, no matter how controversial, in regard to their teaching and research responsibilities.  Protection of academic freedom benefits society by advancing knowledge and allowing faculty to speak on matters of public concern without fear of retaliation or punishment. The Nevada System of Higher Education (hereinafter "NSHE") handbook defines and protects academic freedom. See Nevada System of Higher Education Handbook, Title 2, Chapter 2, §§ 2.1-2.3.5.

2.      Truckee Meadows Community College (hereinafter "TMCC") is one of the eight (8) institutions comprising the NSHE system.  Dr. Jensen has witnessed the deterioration of shared governance and lowering of curriculum standards at TMCC over a multiyear period and felt obligated to exercise his First Amendment rights on multiple occasions to professionally communicate his concerns.  However, rather than respect his academic freedom and right to speak on matters of public concern, TMCC sought to silence Dr. Jensen and punish him.

3.      When attempts to silence Dr. Jensen were unsuccessful, Defendants engaged in willful retaliation and attempts to publicly humiliate him with letters of reprimand, negative annual performance evaluations, and investigations.  All of these actions were directed at Dr. Jensen to harass him for exercising his First Amendment rights.

4.      TMCC's unlawful discipline of Dr. Jensen and other faculty exercising their First Amendment rights has resulted in litigation, media attention, and controversy.  The American Association of University Professors, the Foundation for Individual Rights in Education, the Academic Freedom Alliance, and the Nevada Faculty Alliance have all sent letters condemning the actions of Defendants.

5.      Defendants have unlawfully violated Dr. Jensen's First Amendment right to speak on matters of public concern and his procedural due process rights.  See *Demers v. Austin*, 746 F.3d 1091 (9th Cir. 2014).  These repeated violations have forced Dr. Jensen to seek vindication of the First Amendment protections repeatedly violated by Defendants and to litigate due to the long-term effects of the letter of reprimand, negative evaluations, stress, and psychological trauma he has suffered.

## JURISDICTION AND VENUE

6.      This court has original jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this is an action to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.  Plaintiff seeks remedies under 42 U.S.C. 1983 and 1988.

7.      This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 1983.

8.      Venue is proper in the United States District Court for the District of Nevada, and in the Northern Division of the court, pursuant to 28 U.S.C. § 1391(b).  All events or omissions giving rise to Plaintiff's claims occurred in the District of Nevada, Washoe County.  All Defendants reside or are found, or have agents, and transact business in this judicial district and

their acts in violation of the laws of the United States and the U.S. Constitution have arisen in this judicial district.

## PARTIES

**Plaintiff**

9.      The Plaintiff, Dr. Lars Jensen, at all times relevant to this Complaint was, and still is, a Community College Professor at TMCC.  Dr. Jensen is in the Mathematics Department in the Math and Physical Sciences Division. Dr. Jensen teaches math classes at TMCC.  He began his employment at TMCC in 1996 and obtained tenure in 1999.

10.      Dr. Jensen received his Master of Science from the University of Copenhagen, Denmark in 1979 and Ph.D., from the University of Pennsylvania in 1984.

11.      Dr. Jensen is a U.S. citizen and at all times relevant to this Complaint was a resident of Washoe County, Nevada.

**Defendants**

12.      Defendant Dr. Natalie Brown is the Executive Director of the Advisement and Transfer Center at TMCC.  She was appointed by President Hilgersom to act as the administrative officer during the investigation and disciplinary hearing of Dr. Jensen.  See Nevada System of Higher Education Handbook, Title 2, Chapter 6 § 6.7.1.  Dr. Brown was responsible for violating Dr. Jensen's constitutionally protected due process rights by not following the NSHE Code during the investigation of Dr. Jensen.  She participated in and condoned the continuing retaliation against Dr. Jensen for the exercise of his free speech rights. At all times relevant to this case, Dr. Brown was acting in an official capacity as an agent and employee of TMCC and was acting within the scope of her employment and under color of the laws of the State of Nevada.   She is sued in her individual and official capacities.

13.     Defendant Dr. Julie Ellsworth was the Dean of Sciences at TMCC from 2017-2020.   Dr. Ellsworth was the administrator who violated Dr. Jensen's first amendment rights two times during the Math Summit on January 21, 2020.  She also instigated two adverse employment actions against Dr. Jensen that are the subject of this complaint.  These adverse employment actions were retaliation against Dr. Jensen for the exercise of his free speech rights at the Math Summit on January 21, 2020.  At all times relevant to this case, Dr. Ellsworth was acting in an official capacity as an agent and employee of TMCC and was acting within the scope of her employment and under color of the laws of the State of Nevada.  She is sued in her individual and official capacities.

14.     Defendant Anne Flesher is the Dean of Math and Physical Sciences at TMCC.  Defendant Flesher instigated adverse employment actions against Dr. Jensen that were in retaliation against Dr. Jensen for the exercise of his free speech rights at the Math Summit on January 21, 2020.  She participated in and condoned the continuing retaliation against Dr. Jensen for the exercise of his free speech rights.  At all times relevant to this case, Defendant Flesher was acting in an official capacity as an agent and employee of TMCC and was acting within the scope of her employment and under color of the laws of the State of Nevada.   She is sued in her individual and official capacities.

15.     Defendant Dr. Karin Hilgersom is the President of TMCC.  In that capacity, Dr. Hilgersom had oversight responsibility for the administration of the College.  She participated in and condoned the continuing retaliation against Dr. Jensen for the exercise of his free speech rights.  Dr. Hilgersom violated Dr. Jensen's due process rights by authorizing an invalid investigation and authorizing a biased committee member at Dr. Jensen's disciplinary hearing.  At all times relevant to this case, Dr. Hilgersom was acting in an official capacity as an agent

and employee of TMCC and was acting within the scope of her employment and under color of the laws of the State of Nevada.  She is sued in her individual and official capacities.

16.     Defendant Dr. Marie Murgolo was the Vice President of Academic Affairs at TMCC.  She participated in and condoned the continuing retaliation against Dr. Jensen for the exercise of his free speech rights.  At all times relevant to this case, Dr. Murgolo was acting in an official capacity as an agent and employee of TMCC and was acting within the scope of her employment and under color of the laws of the State of Nevada.   She is sued in her individual and official capacities.

17.     Defendant Dr. Melody Rose is the Chancellor of the Nevada System of Higher Education.  She participated in and condoned the continuing retaliation against Dr. Jensen for the exercise of his free speech rights.  At all times relevant to this case, Dr. Rose was acting in an official capacity as an agent and employee of TMCC and was acting within the scope of her employment and under color of the laws of the State of Nevada.  She is sued in her individual and official capacities.

## **FACTUAL ALLEGATIONS**

### *Dr. Jensen Has Spoken on Matters of Pubic Concern.*

18.     Dr. Jensen was hired by TMCC on January 16, 1996 and became tenured on July 1, 1999.

19.     During his service to TMCC, Dr. Jensen has primarily taught pre-calculus, algebra, calculus, differential equations, statistics, physics for scientists and engineers, and college physics courses.

20.     During his time at TMCC math standards have been continually altered to make it easier for students to complete courses and internal procedures relating to shared governance

have been increasingly ignored.  These changes have created disagreements and tension among faculty, administrators, and the greater community.

21.     As an academic faculty member Dr. Jensen is required to be "…responsible for the maintenance of appropriate standards of scholarship and instruction."  See Nevada System of Higher Education Handbook, Title 2, Chapter 2 § 2.1.3.

22.     Dr. Jensen has consistently voiced his concerns regarding the lowering of math standards and deterioration of shared governance at TMCC since at least 2017.

23.     For example, Dr. Jensen sent to the TMCC faculty listserv on February 13, 2018, an email titled "On the issue of Confidentiality" where he expressed concerns about college policies and leadership.

24.     In June of 2019 the Board of Regents for the NSHE passed the Co-Requisite Policy.

25.     On December 18, 2019, Dr. Jensen sent an email to the math department faculty where he expressed specific concerns regarding math standards at TMCC.

26.     On January 21, 2020, Dr. Ellsworth organized a Math Summit at TMCC to discuss with the community how the Board of Regents of the NSHE Co-Requisite policy would be implemented from 9:30 a.m. until 1:30 p.m.

27.     The agenda for the meeting listed updates regarding: (1) policy timeline and implementation, (2) pre-requisites and co-requisites, (3) revamped Math 120 course curriculum, new Math 124 course, (5) Math support co-requisites for Math 120 and Math 124, and (6) revised math pathways.

28.     Following the conclusion of the morning presentation of the Math Summit on January 21, 2020, Dr. Ellsworth took questions from the audience.

29.     Dr. Ellsworth allowed all participants to comment at the Math summit except Dr. Jensen.

30.     Dr. Jensen raised his hand and stated that he wanted to make a comment to benefit individuals present who were not from the math department.

31.     Dr. Jensen then stated that he wanted, "…to point out a couple of things a look under the hood would reveal."  Dean Ellsworth then abruptly cut off his comment and ended the question-and-answer session.

32.     Dr. Ellsworth stated Dr. Jensen could not comment because the event was out of time even though there was a fifteen-minute break following the presentation.  Further, Dr. Ellsworth allowed any other participant who wished to comment or question to do so during the entire presentation without any censorship.

33.     Dr. Jensen again requested to speak and Dr. Ellsworth refused to allow him to speak a second time and then directed Dr. Jensen to use the "parking lot" for his comment.

34.     Dr. Jensen then left the Math Summit and went to his office where he typed out his comments in a handout titled "On the Math Pathways – Looking Under the Hood." A copy of the handout is included as Exhibit A.

35.     In the handout Dr. Jensen stated that the Math Department's response to the Co-Req policy would be, "…to lower the academic level of Math 120 so students will be able to complete the course at current rates. (The department has allowed completion rates to dictate the academic level of an exit math course.)."  See Exhibit A.

36.     Dr. Jensen's handout went on to describe the impact on the policy on degree and certificate programs by stating it, "…will directly impact 31% of our degree- and certificate

programs by lowering the math- and technical skills of graduates in these programs." See Exhibit A.

37. The handout concluded by discussing the impact on the community, "Employers in the community pays our salaries, and subsidizes students' education, through their taxes. What do they expect in return? Answer: Qualified graduates. It is well known that employers, including all the high-tech companies coming into our area, value math skills because the more math classes a student has taken, the higher the salary an employer will pay. Well, employers will soon get much less than they have been paying for. TMCC is planning to do the exact opposite of what the community wants: We are going to lower the level of our exit classes and the math skills of our graduates, in the name of preserving completion rates." See Exhibit A.

38. Dr. Jensen then returned to the Math Summit during a break and went room to room to distribute the handout.

39. Dr. Jensen was not disruptive and multiple witnesses confirmed under oath during his disciplinary hearing that he was professional while distributing the handout.

40. Dr. Ellsworth then began to physically pick up copies that were distributed and motioned for the participants to return their copies to her.

41. Dr. Jensen then communicated to Dr. Ellsworth that it was break time and he was not being disruptive or disturbing anyone. Dr. Ellsworth again denied Dr. Jensen the opportunity to distribute his handout.

42. Dr. Jensen then left room RDMT 256 and went into RDMT rooms 252 and 253 and began to distribute his handout.

43. Dr. Jensen then returned to RDMT room 256 and began distributing the handout again. The continued distribution of the handout in RDMT 256 angered Dr. Ellsworth who then

directed him to immediately stop distributing the handouts and asked him to step outside for a private talk.

44.     In the hallway Dr. Ellsworth stated to Dr. Jensen that this was "her workshop" and he was not allowed to distribute anything.  Dr. Ellsworth then made disparaging remarks to Dr. Jensen.  She accused him of being a "bully," "disobeying her," and being "disruptive."  Then Dr. Ellsworth stated to Dr. Jensen that he had "made an error by defying her."

45.     The handout distributed at the Math Summit jeopardized defendants' plans for implementation of the Co-Requisite Policy at TMCC.

***Multiple Adverse Employment Actions have been taken by Dr. Ellsworth against Dr. Jensen for Engaging in Fully Protected Speech.***

46.     Following the Math Summit on January 21, 2020, Dr. Ellsworth sent Dr. Jensen a letter of notice of reprimand on January 30, 2020, which contained the proposed letter of reprimand.

47.     In the letter Dr. Ellsworth stated that Dr. Jensen's behavior at the Math Summit constituted "insubordination" and disrupted the event.

48.     Dr. Ellsworth incorrectly applied the definition of "insubordination" to Dr. Jensen.  See Nevada System of Higher Education Handbook, Title 3, Section 3(k); *State ex rel. Richardson v. Board of Regents*, 70 Nev. 347. 269, P.2d 265 (1954).

49.     The incorrect application of insubordination to Dr. Jensen can only be viewed as retaliation for the exercise of his First Amendment right to comment on matters of public concern.  See *Demers*, 746 F.3d at 402

50.     On February 3, 2020, Dr. Jensen filed a grievance seeking vindication of his academic freedom and First Amendment rights against Dr. Ellsworth.

51.     On February 5, 2020, Dr. Jensen sent an email titled "Lowering Standards is Criminal – Literally" to faculty listserv at TMCC.  In the email, Dr. Jensen cited the NSHE Handbook Title 2, Chapter 2 § 2.1.1 and Title 2, Chapter 2 § 2.1.3 as examples that faculty are required to maintain standards of instructions and that faculty work for the common good.

52.     After pressure from Dr. Ellsworth, Dr. Jensen felt forced to offer his resignation as chair and as a member of Dr. Jonathan Lam's tenure committee on February 11, 2020.

53.     On March 30, 2020, Dr. Ellsworth gave Dr. Jensen a letter of reprimand that was placed in his personnel file.

54.     Dr. Ellsworth then began to raise minor issues such as syllabus policies to Dr. Jensen in an attempt to further retaliate against him for exercising his First Amendment rights.

55.     On March 6 and April 9, 2020, Dr. Ellsworth sent emails to Dr. Jensen accusing him of having "punitive" course policies.  The policies in question were used extensively by math faculty for a long period of time and Dr. Ellsworth made no attempt to contact other math faculty.  These acts by Dr. Ellsworth can only be viewed as continuing retaliation for exercising his First Amendment rights.

56.     On May 19, 2020, Dr. Ellsworth ignored the department chair's recommendation of "Excellent 2" and changed Dr. Jensen's annual performance evaluation to "Unsatisfactory." This is the lowest possible rating at TMCC.   In her written comments, Dr. Ellsworth stated:

> "Professor Jensen exhibited insubordination in two instances, one which is documented in relationship to the Math Summit and is on record in HR, and the other one in regard to the requested alteration of a course syllabus."

57.     Dr. Jensen filed four grievances related to the adverse employment actions taken against him by Dean Ellsworth for exercising his First Amendment rights and all were not seriously considered or reviewed by Defendants.

58.     On November 24, 2020, Chancellor Melody Rose denied Dr. Jensen's grievance that was submitted for the violations of his free expression and academic freedom.

59.     Dr. Ellsworth's incorrect annual performance evaluations of Dr. Jensen for the 2019-2020 academic year negatively impacted his academic reputation and future merit pay.

60.     The notice of reprimand, the letter of reprimand, and the adverse annual performance evaluation issued by Dr. Ellsworth can only be explained by her motive to retaliate against Dr. Jensen for exercising his constitutionally protected rights to speak on matters of public concern.

***Dean Flesher Retaliated against Dr. Jensen.***

61.     Dean Flesher attended the Math Summit on January 21, 2020, as a participant and criticized Dr. Jensen at the event.

62.     During the 2020-2021 academic year Dean Flesher took additional adverse employment actions against Dr. Jensen that can only explained by retaliation for his constitutionally protected speech at the Math Summit on January 21, 2020.

63.     Dean Flesher cited minor issues as justification for disregarding Dr. Jensen's chair recommendation of "excellent" to the lowest ranking of "unsatisfactory" in his annual performance evaluation.

64.     Dean Flesher's justification for the ranking was based on criteria that was not equally applied to other faculty.  During the disciplinary hearing multiple witnesses confirmed that Dr. Jensen was evaluated differently from other faculty by Dean Flesher.

65.     Dr. Jensen filed one grievance related to the adverse employment actions taken against him by Dean Flesher for exercising his First Amendment rights.  The grievance was not seriously considered by Defendants.

66.     On July 27, 2021, Chancellor Melody Rose denied Dr. Jensen's grievance based on violation of his free expression and academic freedom.

67.     On June 2, 2021, Dean Flesher wrote a letter to Dr. Hilgersom notifying her that Dr. Jensen had received two consecutive unsatisfactory annual performance evaluations.

**Dr. Brown and Dr. Hilgersom Retaliated against Dr. Jensen and Violated his Procedural Due Process Rights.**

68.     On or around June 16, 2021, President Hilgersom appointed Dr. Natalie Brown to be an Administrative Officer to investigate Dr. Jensen in violation of the NSHE Handbook. See NSHE Handbook Title 2, Chapter 6 § 6.7.1

69.     This was the first disciplinary hearing that had taken place at TMCC for an extremely long period of time.

70.     Dr. Brown violated the Code for investigating Dr. Jensen when she had no authority to investigate since she had not received a complaint.  Under NSHE handbook when a faculty member receives two consecutive unsatisfactory rankings the requirement is hold a hearing only.  See NSHE Handbook, Title 2, Chapter 5 § 5.13.2(a)-(b)

71.     Dr. Brown's investigation was conducted over the summer when faculty were off contract and was completed within approximately 21 days.

72.     For the investigation itself Dr. Brown only interviewed Dr. Ellsworth and Dean Flesher both who had taken adverse employment actions against Dr. Jensen.

73.     Since Natalie Brown's investigation was completed in a rushed manner over the summer it limited Dr. Jensen's ability to respond and made collection of evidence and witnesses difficult.

74.    Dr. Jensen requested the proceedings be delayed since he was out of the country until faculty are back on contract and Natalie Brown ignored the request.

75.    In Dr. Brown's charging letter that followed her improper investigation she violated the Code again by listing out additional charges against Dr. Jensen which she had no authority to investigate.  This can only be viewed as retaliation.

76.    Dr. Brown used the investigation and charging letter to fabricate a basis to terminate Dr. Jensen from employment at TMCC.

77.    On July 12, 2021, President Hilgersom, in what can only be viewed as an attempt to influence the disciplinary hearing, appointed her former colleague Mark Ghan who had previously served as President and General Counsel of Western Nevada College as the Special Hearing Officer.

78.    Mr. Ghan was removed by President Hilgersom by letter on August 4, 2021, after a challenge for cause was raised by Dr. Jensen due to the existence of an ongoing contract between Mr. Ghan and NSHE.  This contractual relationship violated the NHSE Handbook Title 2, Chapter 6 § 6.11.1(b).

79.    The process for challenging the special hearing officer in the NSHE Code violated Dr. Jensen's procedural due process rights by preventing a challenge for cause or preemptory challenge for the replacement special hearing officer.  See NSHE Handbook Title 2, Chapter 6 §§ 6.11.6(a)-(f).

80.    President Hilgersom also refused to order a biased committee member to be removed from the faculty committee at the special hearing.  Mr. Andy Hughes had previously submitted an unsubstantiated complaint of discrimination against Dr. Jensen.  This complaint was investigated by the HR department at TMCC and dismissed.

81.     After the complaint was dismissed President Hilgersom had sent Dr. Jensen a list of stipulations that was retaliatory and resulted in attorney Tom Donaldson sending a letter to President Hilgersom threatening legal action.  The only explanation for this decision from President Hilgersom was to retaliate against Dr. Jensen and bias the hearing committee against Dr. Jensen in violation of the NSHE Handbook.  See NSHE Handbook Title 2, Chapter 6 § 6.11.6(b)(1).

82.     Dr. Jensen was denied a subpoena to have Mr. Andy Hughes appear as a witness at the hearing, which violated his due process rights.

83.     Dr. Jensen was denied a subpoena to have relevant records produced at the hearing that would have helped his defense.  Producing the documents would not have created an administrative burden for the university since they had already been requested by Dr. Jensen.

84.     Dr. Ellsworth, Dean Flesher, Dr. Brown, Dr. Hilgersom, Dr. Murgolo, and Dr. Rose are equally culpable as all of their actions were tainted by the same retaliatory intent.  Each administrator had full knowledge of the nature of the protected speech at the Math Summit on January 21, 2020, and allowed the retaliatory adverse employment actions to proceed.  Each was charged with the responsibility pursuant to state law to ensure that Dr. Jensen was not punished for exercising his first amendment rights.

85.     The pattern of actions taken by the defendants demonstrates a concerted effort to punish Dr. Jensen for his handout at the Math Summit and criticism of a deterioration of shared governance at TMCC.

86.     Stifling Dr. Jensen's speech regarding his distribution of the handout and criticism of the deterioration of shared governance at TMCC promoted no state interest, such as

workplace efficiency or avoiding workplace disruption.  Dr. Jensen's distribution of the handout was during a break, and he had received no lawful written order prohibiting his distribution.

***Defendants' Actions Have Caused a Deprivation of Rights, and Economic and Emotional Damage to Dr. Jensen.***

87.     As a direct and proximate cause of Defendants' acts, Plaintiff has suffered irreparable injury, including being deprived of his constitutional rights to free expression and due process.

88.     Defendants' conduct has caused Plaintiff irreparable harm by violating his First Amendment rights to free expression and precluding him from engaging in First Amendment protected expression in connection with teaching at TMCC.

89.     Defendants' conduct has caused Plaintiff irreparable harm by violating his due process rights by subjecting him to an invalid investigation and biased disciplinary hearing.

90.     Dr. Jensen suffered adverse employment actions due to Defendants' issuing him a letter of reprimand, unsatisfactory annual performance evaluations for academic years 2019-2020 and 2020-2021, disciplinary investigations, and disciplinary hearings.

91.     Due to these adverse employment actions, Dr. Jensen has been prevented from receiving employment benefits and other opportunities at TMCC.

92.     Defendants acted recklessly and with callous disregard for Dr. Jensen's First Amendment rights by retaliating against him for speaking on matters of public concern.

93.     Defendants acted recklessly and with callous disregard for Dr. Jensen's due process rights by subjecting him to an improper investigation, denying him reasonable notice, and subjecting him to a biased hearing panel.

94.     Additionally, Dr. Jensen has experienced significant emotional distress, including physical manifestations of stress and anxiety.

## APPLICABLE STATUTES

### The Defendants Violated the First Amendment Rights of Dr. Jensen.

95.     The First Amendment to the United States Constitution states:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."
> The First Amendment is made applicable to state officials through the Fourteenth Amendment.

96.     Dr. Jensen has a clearly established federal right under the First Amendment of the United States Constitution to speak freely on a matter of public concern as a private citizen and as a professor at TMCC.  His speech at the Math Summit and handout are matters of public concern since they deal with academic standards, quality of education, enrollment, funding, and community expectations for higher education in Nevada.  Further, Dr. Jensen's speech that criticized the deterioration of shared governance at TMCC also involves a clear matter of public concern.

97.     All defendants were aware of Dr. Jensen's clearly established First Amendment rights at all times.  The NSHE Handbook, Title 2, Chapter 2, § 2.1.2 prohibits "censorship or discipline" for faculty exercising their academic freedom rights.

98.     The defendants violated Dr. Jensen's clearly established federal right by taking adverse action against him for distribution of his handout at the Math Summit on January 21,

2020.  Dr. Jensen's speech was a substantial motivating factor for the adverse action that he suffered.  These adverse actions, or retaliation, included, but are not limited to:

    a.   Condoning faculty shunning and humiliation of Dr. Jensen;

    b.   Providing annual reviews of his performance inconsistent with previous reviews that unfairly ranked Dr. Jensen's performance at the lowest level;

    c.   Producing annual performance evaluations that contain false statements and inconsistent evaluation criteria;

    d.   Failing to correct the annual reviews when confronted by Dr. Jensen with evidence and other explanations;

    e.   Subjecting Dr. Jensen to an unlawful investigation in violation of the NSHE Code that violated his Constitutionally protected due process rights;

    f.   Requesting and condoning an investigation that rendered false conclusions about Dr. Jensen that went beyond the scope of the matter;

99.    The actions that harmed Dr. Jensen were taken by defendants acting in their official capacities.

100.    Each defendant is liable for the damage sustained by Dr. Jensen.  There is a causal link between the defendants actions and the injuries sustained by Dr. Jensen as a result of the violations committed by Defendants.

**Dr. Jensen May Sue Under 42 U.S.C. § 1983 for Violation of his First Amendment Rights.**

101.    42 U.S.C. § 1983 provides in part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

102.    The defendants are liable to Dr. Jensen for the deprivation of his First Amendment rights as a result of their official actions, pursuant to 42 U.S.C. § 1983.

## FIRST CAUSE OF ACTION
### First Amendment Retaliation under 42 U.S.C. § 1983
### (Against All Official Capacity Defendants)

103.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

104.    The actions of defendants acting in their official capacity in adopting, endorsing and carrying out a policy of retaliation for the exercise of the free speech rights of Dr. Jensen violate the First Amendment of the United States Constitution on its face and applied.

105.    Dr. Jensen seeks prospective relief against the defendants acting in their official capacities for full expungement of all negative personal files, return of his 2019-2020 annual performance evaluation to "excellent", and return of his 2020-2021 annual performance evaluation to "excellent."

106.    Dr. Jensen is also entitled to relief from defendants for prospective compensation from the date of judgment for salary adjustments he would have received had he not received the unlawful performance reviews.

107.    Defendants are liable for the requested relief pursuant to 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
### First Amendment Retaliation under 42 U.S.C. § 1983
### (Against All Individual Capacity Defendants)

108.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

109.    Each defendant is liable in a personal capacity for action taken in an official capacity.  Each violated Dr. Jensen's clearly established right to exercise free speech on a matter of public concern.  The defendants are liable in their personal capacities for their actions in adopting, endorsing and carrying out a policy of retaliation for the exercise of the free speech rights of Dr. Jensen, which violate the First Amendment of the United States Constitution on its face and applied.  Pursuant to 42 U.S.C. § 1983, the defendants are therefore liable for the damages of Dr. Jensen, which proximately resulted therefrom.

### THIRD CAUSE OF ACTION
### Violation of Nevada Const., Art. 1 § 9
### (All Defendants)

110.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

111.    The Nevada Constitution grants Dr. Jensen speech rights under Art. 1, § 9 and Defendants cannot take action against Dr. Jensen for exercising those rights.

112.    Defendants retaliated against Dr. Jensen for the exercise of his free speech and took other adverse employment actions against him.

113.    Dr. Jensen's comments were on matters of public concern.

114.    Any purported interest of Defendants in promoting the efficiency of public services did not outweigh Dr. Jensen's free speech rights as related to the statements at issue.

115.    Defendants' actions against Dr. Jensen were arbitrary and capricious.

116.    Defendants' conduct violated Dr. Jensen's rights under Art. 1, § 9 of the Nevada Constitution by punishing him for exercising his free speech rights.  Defendants' actions have chilled future speech by sending a message to Dr. Jensen and other employees of TMCC that

they will face similar retaliation and civil rights violations for making statements that are not approved by Defendants.

117.    Dr. Jensen suffered injury due to these constitutional violations and is entitled to relief.

### FOURTH CAUSE OF ACTION
### Violation Procedural Due Process Rights under 42 U.S.C. § 1983
### (Against Defendants Brown, Hilgersom, and Flesher)

118.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

119.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law."

120.    Fourteenth Amendment due process protections are required in higher education disciplinary proceedings at public institutions.

121.    Plaintiff was entitled to reasonable notice and a meaningful opportunity to be heard.

122.    Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the state absent due process.

123.    Plaintiff also has a protected liberty interest in his future employment opportunities which the state cannot deprive him of absent due process.

124.    Plaintiff has a significant interest in avoiding termination for cause or being subjected to a biased hearing panel.

125.    Plaintiff has been and will continue to be forced to tell other employers about the disciplinary hearing, as well as family and friends.

126.     TMCC provided an appeals process that was inherently biased and lacking fair standards and composition.

127.     Providing a fair and impartial panel does not impose a great administrative burden on a university.

128.     Defendants' denied Dr. Jensen two subpoenas that were critical in his defense at the hearing.  The denial was fundamentally unfair to Dr. Jensen.

129.     Defendants' actions and inactions as set forth above were fundamentally unfair to Plaintiff.

130.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has and will suffer irreparable harm, injury and damages, including, but not limited to false permanent findings and discipline on his record, damage to his standing in the community, damage to his personal and professional reputation, denial of future employment opportunities and earning capacity, mental and emotional distress, and humiliation and embarrassment.

**FIFTH CAUSE OF ACTION**
**Violation of Nevada Const., Art. 1 § 8**
**(Against Defendants Brown, Hilgersom, and Flesher)**

131.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

132.     Plaintiff was entitled to reasonable notice and a meaningful opportunity to be heard.

133.     Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the state absent due process.

134.     Plaintiff has a significant interest in avoiding termination or being subjected to a biased hearing panel.

135.     Plaintiff has been and will continue to be forced to tell other employers about the disciplinary hearing, as well as family and friends.

136.     TMCC provided an appeals process that was inherently biased and lacking fair standards and composition.

137.     Providing a fair and impartial panel does not impose a great administrative burden on a university.

138.     Defendants' actions and inactions as set forth above were fundamentally unfair to Plaintiff.

139.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has and will suffer irreparable harm, injury and damages, including, but not limited to false permanent findings and discipline on his record, damage to his standing in the community, damage to his personal and professional reputation, denial of future employment opportunities and earning capacity, mental and emotional distress, and humiliation and embarrassment.

**SIXTH CAUSE OF ACTION**
**Violation of Fourteenth Amendment**
**Equal Protection Clause Pursuant under 42 U.S.C. § 1983**
**(Against All Defendants)**

140.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

141.     The Equal Protection Clause prohibits classifications that treats individuals in similar situations differently.

142.     By subjecting Dr. Jensen to numerous adverse employment actions, retaliation, harassing investigations, and asking him to terminate his First Amendment activities, Defendants by policy and practice have treated Dr. Jensen differently than similarly-situated

Professors and deprived him of his ability to freely express his ideas on issues of public concern at TMCC.

143.    Defendants, acting under color of state law, and by policy and practice, have explicitly and implicitly discriminated against Dr. Jensen and deprived him of his clearly established right to equal protection of the law secured by the Fourteenth Amendment to the United States Constitution.

144.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  He, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

145.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his attorneys' fees.

## SEVENTH CAUSE OF ACTION
### Declaratory Relief Under 28 U.S.C. §§ 2201, *et.seq.*
### (Against All Defendants)

146.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

147.    An actual controversy has arisen and now exists between Dr. Jensen and Defendants concerning whether Defendants' adverse employment actions against Dr. Jensen and Defendants' custom or practice of retaliating against professors who speak out on matters of public concern violates the Constitution.

148.    Plaintiff demands declaratory judgment that Defendants' adverse employment actions against Dr. Jensen, and Defendants' custom or practice of retaliating against and terminating professors for speaking on matters of public concern, are unconstitutional

abridgments of the freedom of speech. Such a declaratory judgment will clarify and settle the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

149.    Plaintiff demands declaratory judgment that Defendants' interpretation of "insubordination" as applied to Dr. Jensen and Defendants' custom and practice of incorrectly charging faculty with insubordination violates the NSHE handbook and Nevada Supreme Court holding in *ex rel Richardson*.

150.    Plaintiff demands declaratory judgment that Defendants' violations of procedural due process as applied to Dr. Jensen, and Defendants' custom or practice of ignoring due process rights of faculty in disciplinary hearings are unconstitutional and violate due process rights guaranteed in the Constitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff expressly reserves the right to amend his Complaint at or before the time of trial of the action herein to include all terms of damages not yet ascertained, and respectfully requests that this Court enter judgment against the Defendants and issue the following forms of relief:

A. A declaratory judgment that Defendants' custom and practice of retaliating against faculty who speak on matters of public concern, including Dr. Jensen, violate the First Amendment to the U.S. Constitution as requested in paragraph 148;

B. A declaratory judgment stating that Defendants' custom and practice of violating procedural due process against faculty in disciplinary hearings, including Dr. Jensen, are unconstitutional and violate the NSHE handbook as requested in paragraph 150;

C.   A declaratory judgment stating that Defendants' custom and practice of charging faculty, including Dr. Jensen, with insubordination violated the NSHE Code and the Nevada Supreme Court Holding in *ex rel Richardson* as requested in paragraph 149;

D.   Enjoining Defendants to rescind their unconstitutional adverse employment actions against Dr. Jensen and to end their custom and practice of taking adverse employment actions against faculty who speak on matters of public concern;

E.   An order directing TMCC to fully expunge the following from Dr. Jensen's record and employment files:

 a.   March 30, 2020 letter of reprimand from Dean Julie Ellsworth;

 b.   letter from Dean Ellsworth dated January 30, 2020;

 c.   all materials related to Dr. Natalie Brown's investigation as administrative officer;

 d.   all negative comments entered by Dean Julie Ellsworth for the 2019-2020 evaluation;

 e.   all negative comments entered by Dean Anne Flesher for the 2020-2021 evaluation;

 f.   letter from Dr. Jeffrey Alexander Re: Unsatisfactory Annual Evaluation, Academic Year 2020-2021 dated September 27, 2021;

 g.   Letter from APRAC Committee to Dr. Jeffrey Alexander dated September 24, 2021;

 h.   Letter from Dean Anne Flesher Re: Article 13, part 2 dated September 1, 2021;

    i.   Letter from Vice President Murgolo RE: Advisory decision regarding 3 grievances filed by TMCC Lars Jensen dated April 30, 2020;

    j.   President Hilgersom letter dated December 21, 2020;

    k.   Chancellor Rose letter Re: Lars Jensen Grievance Appeal dated November 24, 2020;

    l.   Letter from Dean Ellsworth Re: Article 14 Grievances dated September 3, 2020;

    m. Chancellor Rose letter Re: Grievance Appeal to Chancellor dated July 27, 2021; and

F.  An order directing TMCC to return the 2019-2020 evaluation rating to "excellent;" and return of the 2020-2021 evaluation rating to "excellent;"

G.  Compensation from the date of judgment based upon increases or adjustments Dr. Jensen would receive had he not been subject to the unlawful ratings and actions.

Dr. Jensen also prays for the following relief against defendants in their personal capacities:

H.  An award of compensatory damages against all defendants for Dr. Jensen in an amount to be proven at trial;

I.  Punitive damages against defendants in an amount to be proven at trial;

J.  An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

K.  For such other additional relief as the Court may deem just and proper.

///

///

///

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all causes of action.

DATED: January 26, 2022

Respectfully submitted,

By:  /s/ John M. Nolan
John M. Nolan
Nevada Bar No. 15790
2750 Peavine Creek Road
Reno, Nevada 89523
jmnolan84@gmail.com


/s/ Mark Mausert
Mark Mausert
Nevada Bar No. 2398
729 Evans Avenue
Reno, Nevada 89512
Telephone: (775) 786-5477
mark@markmausertlaw.com


/s/ Michael Langton
Michael Langton
Nevada Bar No. 290
801 Riverside Drive
Reno, NV 89503
Telephone: (775) 329-3612
mlangton@sbcglobal.net

*Attorneys for Plaintiff*

1

<u>**VERIFICATION OF COMPLAINT**</u>

2

3    I, Lars Jensen, a citizen of the United States and resident of the State of Nevada, hereby

4    declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

5    1.   That I have read the foregoing Verified Complaint and the factual allegations therein,

6         and the facts as alleged are true and correct.

7

8    2.   Any allegations which are not subject to being stated with certainty were made upon

9         information and belief.

10   3.   I believe the allegations that I do not have personal knowledge of to be true based on

11        specified information, documents, or both.

12

13   Executed this 28th day of January, 2022, at Reno, Nevada.

14

15

16

17

18        _____

          Dr. Lars Jensen

19        Community College Professor

          Truckee Meadows Community College

20

21

22

23

24

25

26

27

28

First Amended Verified Complaint for Civil Rights Violations Under 42 U.S.C. § 1983
3:22-cv-0045