John Albrecht, NV Bar No. 4505
General Counsel
Kiah D. Beverly-Graham, NV Bar No. 11916
Deputy General Counsel
Truckee Meadows Community College
2215 Raggio Parkway
Reno, Nevada 89512-1095
(775) 673-7396
(775) 673-7135 fax
john.albrecht@dri.edu
kiah.beverly@dri.edu

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

LARS JENSEN,

       Plaintiff,

      v.

NATALIE BROWN, et al.

       Defendants.

Case No. 3:22-cv-00045-MMD-CLB

## <u>DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

All Defendants, by and through their undersigned attorneys, hereby move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's First Amended Complaint (ECF No. 8) (the "FAC"). This Motion to Dismiss ("Motion") is based upon the papers and pleadings on file herein, including documents attached to or incorporated into the pleadings; the accompanying Declaration of Kiah Beverly-Graham ("Beverly-Graham Decl."); documents and information of which the Court may take judicial notice, as identified on the accompanying Request for Judicial Notice ("RJN"); the following Memorandum of Points and Authorities; and any oral argument the Court may entertain.

///

///

-1-

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Dr. Lars Jensen is a current tenured professor of mathematics at Truckee Meadows Community College ("TMCC"). He brings this action against several members of TMCC's administration and the Chancellor of the Nevada System of Higher Education ("NSHE"), of which TMCC is a part. In sum, Dr. Jensen alleges the Defendants (i) retaliated against him, through various disciplinary actions, for exercising his right to free speech and (ii) conducted a termination hearing – which did not actually result in termination or any other sanction – in violation of his procedural due process rights.

At its heart, this case is about the events that occurred at a TMCC "Math Summit" held in June 2020. As Dr. Jensen alleges it, the Math Summit was organized by his supervisor, Defendant Dr. Ellsworth; was to proceed on a specific agenda; and was called for the purpose of explaining how TMCC's math department was going to implement new curricular standards imposed by TMCC's governing body, the Board of Regents of NSHE (the "Board of Regents").

According to the FAC, shortly before a break at the Math Summit Dr. Jensen sought to be heard on his long-standing criticisms about how the new standards were to be implemented. His supervisor declined to let him air his criticisms in that context and instead directed him to post his thoughts in writing on the "parking lot", a whiteboard in the meeting room to which participants could affix written comments. Dr. Jensen left to obtain a typed version of his comments and then, in defiance of his supervisor's instruction to use the parking lot, passed it out to attendees. His supervisor indicated that he should stop, and he ignored her. She again indicated he should stop and, apparently in view of other attendees, he again disregarded her instructions and continued to pass out the document. Unsurprisingly, TMCC disciplined Dr.

Jensen for his publicly insubordinate conduct. He now alleges that discipline was in retaliation for his exercise of First Amendment rights.

The FAC alleges that the discipline was the result of TMCC's President, two deans, a fourth administrator, and the Chancellor of the entire NSHE system engaging in a "concerted effort to punish Dr. Jensen" for his speech and that all are "equally culpable" for this "pattern of actions[.]" *See*, FAC ¶¶ 84-85. The plain import of these allegations is that Dr. Jensen believes he is the victim of a conspiracy, reaching the highest levels of state-wide NSHE administration, designed to punish him for his comments. This conspiracy theory, which animates the entire FAC, is facially implausible and undermines the overall plausibility of the pleading.

Though various other claims are asserted, the First Amendment is what this action is really about. The claims thereunder fail for several reasons. Dr. Jensen's open disdain for the authority of his supervisor, as described in the FAC, plainly triggered TMCC's interest as a state employer to take disciplinary action for employee misconduct. TMCC has no legal obligation to sit back and allow insubordination just because the conduct is purportedly expressive. That government interest outweighs any supposed First Amendment rights. The FAC also fails to plausibly allege the speech at issue was of public concern or was made by Dr. Jensen in his capacity as a private citizen. These failings separately warrant dismissal as a matter of law.

For these reasons, as well as those discussed herein, the FAC should be dismissed.

## <u>THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT</u>

Dr. Jensen is a tenured math professor, presently employed at TMCC. FAC ¶¶ 18-19. He alleges TMCC engaged in the following wrongdoing over the course 2020 and 2021.

///

///

I. **Alleged First Amendment Violations**

   A. **The Speech At Issue**

Dr. Jensen alleges four specific instances of expressive conduct for which Defendants purportedly retaliated against him. Most of the speech at issue is Dr. Jensen's criticism of TMCC's implementation of a new policy (the "Co-requisite Policy") which was passed in June 2019 by the Board of Regents. The Co-requisite Policy mandated that NSHE institutions place students into college level courses while requiring them to simultaneously take, if needed, lower-level courses as "co-requisites" rather than taking them as "pre-requisites." *See* FAC, Ex. A.

Dr. Jensen criticized the implementation of the Co-requisite Policy on three occasions: (i) in a December 2019 email to TMCC's math department; (ii) at the January 2020 Math Summit; and (iii) in a February 2020 email to TMCC faculty. FAC ¶¶ 25, 35, 51.

Dr. Jensen also alleges that he sent an email in February 2018 to the TMCC faculty concerning "college policies and leadership" (together with the emails referred to in the foregoing paragraph, the "Emails"). FAC ¶ 23.

Defendants' supposed retaliation for Dr. Jensen's speech at the Math Summit is the crux of the FAC and is the only purported expressive conduct pled in any detail.

According to the FAC, Defendant Dr. Ellsworth, who was Dr. Jensen's direct supervisor, "organized a Math Summit at TMCC to discuss with the community how the [Co-requisite Policy] would be implemented . . ." *Id*. ¶ 26. As alleged, the Math Summit was to take place during a specific time and follow a specific agenda. *Id*. ¶¶ 26-27.

At some point before a lunch break, "Dr. Ellsworth took questions from the audience." *Id*. ¶ 28. According to Dr. Jensen, he raised his hand – not to ask a question but rather to a make an apparently critical comment regarding what a "look under the hood" of the Co-requisite

-4-

Policy implementation would reveal. *Id*. ¶¶ 28-31. According to the FAC, Dr. Ellsworth "cut off his comment and ended the question-and-answer session" in favor of taking a break, stating that "Dr. Jensen could not comment because the event was out of time[.]" *Id*. ¶¶ 31-32.

When "Dr. Jensen again requested to speak . . . Dr. Ellsworth refused to allow him to speak a second time and then directed Dr. Jensen to use the 'parking lot' for his comment." *Id.* ¶ 33. The FAC does not define the "parking lot", but it is described in the written reprimand (the "Reprimand") that is incorporated into the FAC as a basis for Dr. Jensen's claims. *See* FAC ¶ 60 (alleging Reprimand was in retaliation for protected speech). Thus the Court may consider the Reprimand for this Motion. *See, U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The "parking lot" was a whiteboard provided for Math Summit participants to post comments. *See* Beverly-Graham Decl., Ex.1 (Reprimand) at 1.

Dr. Jensen left the meeting and went to his office where he prepared a written version of the comments he wanted to make. *Id*. ¶ 34-35. That document is attached to the FAC as Exhibit A. Dr. Jensen alleges that he returned to the meeting and, in defiance of his supervisor's prior instructions to post his written comments on the "parking lot", began to hand out the document, including in different rooms that apparently were being used as breakout rooms by some Math Summit participants. *Id*. ¶¶ 38-43. Dr. Ellsworth indicated to Dr. Jensen that he should stop by physically picking up copies and motioning for those passed out to be returned. *Id*. ¶ 40. Dr. Jensen apparently disregarded the implied instruction. Dr. Ellsworth then again "denied" Dr. Jensen's efforts to pass out the document, and Dr. Jensen again disregarded her instructions. *Id*. ¶ 41. Dr. Ellsworth then took Dr. Jensen aside and criticized his conduct as "disruptive", "bully[ing]", and defiant of her role as the organizer of the workshop. *Id*. ¶ 44.

Though the FAC is vague about who attended the Math Summit, the Reprimand describes it as "a planned professional development workshop" with food provided. Ex. 1. It is clear from this description that the Math Summit was a non-public work event.

The FAC is vague about Dr. Ellsworth's professional relationship with Dr. Jensen. It does allege that she counseled him on his grading policies, authored a letter of discipline concerning his conduct, and evaluated him in his 2020 review. FAC ¶¶ 53-56. It is inferable from these allegations that Dr. Ellsworth was Dr. Jensen's direct supervisor at the time of the Math Summit.

## B.  Alleged Acts of Retaliation

Generally, the FAC is silent as to any nexus between the Emails and Defendants' purported retaliation. Rather, Dr. Jensen makes a series of vague and conclusory allegations that each of the Defendants "retaliate[d] against [him] for exercising his constitutionally protected rights to speak on matters of public concern." *E.g.*, FAC ¶¶ 60, 65, 84, 104, 109, 112.

The FAC details only one instance of speech against which Defendants supposedly retaliated – the conduct at the Math Summit. *See, e.g.*, FAC ¶¶ 84-85. According to Dr. Jensen, following the Math Summit Defendants purportedly retaliated against him for his conduct there as follows: (i) Dr. Ellsworth issued a letter of reprimand; (ii) Dr. Ellsworth rated him as "Unsatisfactory" on his 2020 annual evaluation; and (iii) after the receipt of a second consecutive "Unsatisfactory" on his 2021 annual evaluation, given by his subsequent supervisor Defendant Dean Flesher, TMCC commenced disciplinary proceedings against Dr. Jensen as required by NSHE regulations (the "Termination Proceedings"). FAC ¶¶ 46-47, 53, 56, 63, 68-70.

## II.   The Alleged Due Process Violations

Dr. Jensen alleges that in and around June 2021, TMCC commenced the Termination Proceedings because he received two consecutive unsatisfactory ratings in his annual reviews.

FAC ¶ 70. As alleged, this process was pursuant to NSHE Handbook, Title 2, Chapter 5 §

5.13.2(a)-(b). According to the FAC, Defendants' handling of the Termination Proceedings

violated Dr. Jensen's procedural due process rights. *See* FAC ¶¶ 68-94, 118-130. The allegations

in this regard are wide-ranging but in sum are as follows.

Dr. Brown allegedly violated Dr. Jensen's due process rights during her investigation of

his alleged misconduct because she (i) had no authority to investigate due to the purported

absence of a "complaint"; (ii) conducted her investigation over the summer when Dr. Jensen was

not teaching; (iii) interviewed only Dr. Ellsworth and Dean Flesher; (iv) declined to delay the

proceedings; (v) listed additional charges which she did not have authority to investigate in her

Charging Letter; and (vi) "fabricated" a basis to terminate Dr. Jensen. FAC ¶¶ 70-76.

President Hilgersom allegedly violated Dr. Jensen's due process rights by (i) appointing

her supposed "former colleague . . . as the Special Hearing Officer", then removing him once the

potential conflict was brought to her attention; (ii) "preventing", in some unexplained way, a

challenge to the very special hearing officer the FAC alleges President Hilgersom removed; and

(iii) refusing to order removal of a supposedly biased member of the faculty committee that was

also involved in the Termination Proceedings, notwithstanding the fact the proceedings did not

result in his loss of employment. FAC ¶¶ 77-81.

Unspecified Defendants "denied", in some unexplained fashion, Dr. Jensen a subpoena

for witnesses and documents. FAC ¶¶ 82-83.

The FAC alleges that Dr. Jensen was "entitled to reasonable notice and a meaningful

opportunity to be heard" (FAC ¶ 121), but it does not allege Dr. Jensen was denied those rights.

Rather, it alleges the Termination Proceedings were conducted pursuant to NSHE Handbook,

Title 2, Chapter 5 § 5.13.2. FAC ¶ 70. Among other things, this section of the Handbook (a set of

NSHE regulations with force of law) requires that when an NSHE faculty member, such as Dr. Jensen, receives "unsatisfactory" ratings in two consecutive years, a hearing shall be held to determine if the faculty "should be retained in employment." *See* RJN Ex. 4 at p. 7, § 5.13.2(a). That hearing is to be conducted under Section 6.11 of the NSHE Handbook and all other provisions of Chapter 6 of the Handbook "should be followed to the extent applicable[.]" *Id*. § 5.13.2(b).

Section 6.11 contains numerous procedural safeguards in Dr. Jensen's favor including the right to (i) a neutral hearing officer, licensed to practice law, who finds facts (6.11.1(b), 6.11.2); (ii) challenge the officer for cause (6.11.1(c)); (iii) a "special hearing committee" of faculty members who hear evidence and make a recommendation to the president as to whether or not to dismiss the faculty member (6.11.4); (iv) challenge the special committee members for cause and peremptorily (6.11.6); (v) a hearing; and (vii) to appeal the hearing's outcome. Ex. 4 at 14-19.

Other provisions of Chapter 6 applicable to this hearing process include protections, such as (i) a minimum of ten calendar days' notice before the hearing, which notice must specify the misconduct charged (6.9.3); (ii) right to counsel (6.9.3(a)(4) and 6.9.6); (iii) the right to examine, at least five days' prior to the hearing, all documentary evidence to be presented (6.9.4); (iv) the faculty member's right to "present, challenge or rebut evidence and to question or cross-examine witnesses" (6.9.4); the right to have issued subpoenas for witnesses or documents (6.9.11); and a "preponderance of the evidence" standard of proof (6.9.14). Ex. 4 at 10-13.

The FAC fails to allege Dr. Jensen was denied the foregoing protections.

### III.     Summary of Other Allegations

The FAC also alleges (i) that Defendants violated Dr. Jensen's rights under the Equal Protection Clause; (ii) causes of action under provisions of the Nevada Constitution analogous to

federal First Amendment and procedural due process provisions ("Supplemental State Claims"); and (iii) entitlement to declaratory relief on a variety of issues arising from the foregoing.

## LEGAL STANDARD

A court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering the Motion, the pleading's labels and conclusions or formulaic recitations of the elements of a cause of action are not entitled to an assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.   The Causes of Action Alleging First Amendment Violations Should Be Dismissed

The FAC asserts two causes of actions against Defendants (one in their individual and one in their personal capacities) under 42 U.S.C. § 1983 for "First Amendment Retaliation." In sum, the FAC alleges that Dr. Jensen suffered retaliation in the form of various disciplinary actions after he "voiced his concerns regarding the lowering of math standards and deterioration of shared governance at TMCC since at least 2017." FAC ¶ 22. As alleged, these concerns were voiced in the three Emails and at the Math Summit. FAC ¶¶ 23-43, 51.

Regarding the Emails, the FAC fails to allege any plausible facts which, if true, would demonstrate they were a substantial motivating factor for the alleged disciplinary action. The Emails do not support the First Amendment claims and can be put aside for this analysis.

The FAC's allegations center on Dr. Jensen's speech at the Math Summit. In this regard the pleading fails to adequately allege that (i) Dr. Jensen's First Amendment interests outweigh

Defendants' interest in maintaining discipline and supervisory authority; (ii) Dr. Jensen spoke on

an issue of public concern; (iii) that Dr. Jensen spoke as a private citizen; or (iv) his speech

constitutes teaching or academic writing.

## A.  The Ninth Circuit's Framework for Evaluating Retaliation Claims

The Ninth Circuit test for evaluating a government employee's First Amendment

retaliation claim considers the following five factors:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether
> the plaintiff spoke as a private citizen or public employee; (3) whether the
> plaintiff's protected speech was a substantial or motivating factor in the
> adverse employment action; (4) whether the state had an adequate
> justification for treating the employee differently from other members of
> the general public; and (5) whether the state would have taken the adverse
> employment action even absent the protected speech.

*Hettinger v. Fipps*, No. 13-cv-00364-MMD, 2014 WL 1783857, at *4 (D. Nev. May 5, 2014)

(Du, J.). (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).

These are referred to as the *Eng* factors. Failure to meet any is fatal to the plaintiff's case.

*Coomes v. Sch. Dist.*, 816 F.3d 1255, 1260 (9th Cir. 2016) (citing *Dahlia v. Rodriguez*, 735 F.3d

1060, 1067 n. 4 (9th Cir. 2013) (en banc)). Because all five factors are independently necessary,

the Court is free to address a dispositive factor first rather than addressing each sequentially. *Id*.

A plaintiff may be excused from establishing the second *Eng* factor – i.e. the "private

citizen or public employee" prong – only where the speech at issue is adequately alleged to be

"teaching and academic writing that are performed pursuant to the official duties of a . . .

professor." *See Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014).

## B.  The FAC Fails to Allege the Emails Were a Substantial Motivating Factor in Any Discipline

The FAC alleges the existence of three instances of expressive communication via

email. FAC ¶¶ 23, 25, 51. But it fails to allege facts which if proven would plausibly

-10-

demonstrate that the Emails were a "substantial or motivating factor" in the discipline. *See Eng*, 552 F.3d at 1071; *see also Knickerbocker v. Stockton*, 81 F.3d 907, 911 (9th Cir. 1996) (protected activities are a substantial factor in discipline where the adverse actions would not have been taken "but for" the protected activities).

Notably, the FAC fails to describe the Emails with any meaningful detail or even attach them. The FAC also contains nothing more than conclusory allegations that would connect the disciplinary action to the Emails. Essentially, the pleading alleges Dr. Jensen wrote the Emails, then was later disciplined, without pleading any facts that connect the two events. This is the exact sort of case where courts conclude the expressive conduct was not a motivating factor for the adverse action. *See Demers*, 746 F.3d at 413-14; *Hettinger*, 2014 WL 1783857, at *5 (dismissing First Amendment claim where the pleading "simply alleges that the relevant speech occurred in the time between committing the offense and getting fired and that the speech was the cause of termination").

Accordingly, the Emails can be put aside and the analysis should focus on the true crux of the complaint – the events of the Math Summit.

## C. The FAC's Allegations Reveal That Defendants Had a Legitimate Interest in Disciplining Dr. Jensen for His Insubordinate Conduct

*Eng*'s fourth factor – whether the state had adequate justification for imposing the discipline – invokes the balancing test established by the Supreme Court in *Pickering v. Board of Ed*, 391 U.S. 563 (1968). *See Eng* 552 F.3d at 1071. Under this prong, the state actor bears the burden of showing its legitimate administrative interests outweigh the employee's First Amendment rights. *Id*. Based on the allegations in the FAC, Defendants meet that burden as a matter of law.

-11-

The particular state interest at issue here is ascertainable from the FAC, which alleges that at the Math Summit – an internal TMCC professional development event with a specific and limited agenda – Dr. Jensen repeatedly disregarded instructions from his direct supervisor, who was also running the event. FAC ¶¶ 32-43. These allegations put at issue well-recognized and legitimate administrative interests in maintaining employee discipline and supervisory authority. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (state interest in avoiding expressive conduct which, among other things, "impairs discipline by superiors") (citing *Pickering*, 391 U.S. at 570-73); *Cochran v. Los Angeles*, 222 F.3d 1195, 1200-02 (9th Cir. 2000) (employer interest in preserving discipline outweighs employee interest in speech); *Pool v. VanRheen*, 297 F.3d 899, 909 (2002) (same).

The authorities clearly establish that Defendants had a legitimate interest in preventing the insubordinate conduct alleged in the FAC, including through the disciplinary measures taken in response. This is the type of circumstance in which the courts have recognized that a government employer "must have wide discretion and control over the management of its personnel and internal affairs." *See Connick v. Myers*, 461 U.S. 138, 151 (1983). The question is whether that interest outweighs Dr. Jensen's alleged First Amendment interests. It does.

The FAC suggests Dr. Jensen's First Amendment interest at the Math Summit was in being heard on his views about TMCC's implementation of the Co-requisite Policy. But the interest alleged is far more specific than that. As alleged, Dr. Jensen was given the opportunity to express his thoughts by posting them in written form on a board provided for that purpose. *See* FAC ¶ 33. He refused to do so as instructed by his supervisor. *Id*. ¶¶ 38-43. Instead, he insisted on handing the document out directly to participants. *Id*. The real interest Dr. Jensen asserts is in delivering his message in the exact manner that he wished.

On balance, Defendant's interests outweigh Dr. Jensen's. This is for reasons like those embraced by the Supreme Court when it held in favor of the government employer in *Connick*. In that case, a state employee was disciplined for distributing a questionnaire at work which her employer found to be insubordinate conduct. 461 U.S. at 141. Rejecting her First Amendment retaliation claim, the Court agreed with the employer's view that the conduct at issue threatened the supervisor's ability to run the office. *Id*. at 153. Of particular relevance to this action is the Court's holding that that "[w]hen a government employee personally confronts his immediate supervisor, the employing agency's institutional efficiency may be threatened[.]" *Id*.

The FAC alleges such a confrontation. According to Dr. Jensen, he repeatedly defied his supervisor's authority in the middle of a meeting at which numerous other TMCC employees were present. Though couched in neutral language, these allegations describe a public challenge by an employee. That is the sort of confrontation which the Court in *Connick* noted would support a conclusion that the state's interest in institutional efficiency outweighs the employee's expressive interests. *Id*. (citing *Givhan v. Sch. Dist.,* 439 U.S. 410, 415 n. 4 (1979)).

The FAC alleges a set of facts which, even if true, will ultimately preclude relief under the fourth *Eng* factor, and the First Amendment Retaliation claims should be dismissed. *See Coomes*, 816 F.3d at 1260 (failure to adequately allege any of the five *Eng* prongs is fatal).

### D.  The First Amendment Claims Should Be Dismissed Because the FAC Fails to Plausibly Allege Speech of Public Concern

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest" the speech at issue is not protected by the First Amendment and cannot ground a cause of action for retaliation. *See Connick*, 461 U.S. at 147; *see also Eng*, 552 at 1070 (first *Eng* factor). This is a question of law, and the plaintiff has the burden of showing that the speech is of public concern. *Eng*, 552 F.3d

at 1070. In making this determination, the Court should consider the content, form and context of the speech at issue. *Demers*, 746 F. 3d at 415.

        i.    The Content of the Speech Alleged Does Not Plausibly Relate to a Matter of <u>Public Concern</u>

The content of speech is of public concern when it relates to some matter of political, social, or other concern to the community. *See Eng*, 552 F.3d at 1070.

Putting aside the Emails – which the FAC fails to plausibly allege were the motivating factor behind any retaliatory conduct as discussed above – the content at issue in this action is the handout that Dr. Jensen attempted to distribute at the Math Summit. *See* FAC ¶¶ 34-45; FAC Ex. A. The handout concerns the supposed lowering of standards in one particular TMCC class – Math 120 – purportedly caused by the manner in which TMCC implemented the Co-requisite Policy. According to Dr. Jensen, lowering the standards in this single class will have various follow-on adverse effects on the community and its employers. These statements are generally conclusory and without reference to any supporting evidence.

Thus, the "public concern" purportedly addressed by Dr. Jensen's speech is his speculation about the supposed impact on the community that will follow from TMCC's internal curricular decisions with respect to a single math class. *See* Ex. A. This is really a criticism of internal operational policy of the sort the courts have held to not be of public interest. *See Brooks v. Bd. of Regents*, 406 F.3d 476, 480 (7th Cir. 2005).

The references in Exhibit A to community impact do not change the analysis. The Ninth Circuit has "never held that a simple reference to government functioning automatically qualifies as speech on a matter of public concern." *Desrochers v. San Bernardino*, 572 F.3d 703, 711 (9th Cir. 2009); *see also Murray v. Williams*, 670 Fed.Appx. 608, 609 (9th Cir. 2016)

(statements which "marginally" relate to public concern and were made to co-workers were not entitled to First Amendment protection).

     ii.    The Context of the Speech At Issue – A Non-Public Work Event – Indicates The <u>Speech Was Not of Public Concern</u>

In determining whether speech is of public concern, the context of the speech should also be considered. If, as here, the employee expresses a grievance to a limited audience, such suggests a lack of public concern. *See Turner v. San Francisco*, 788 F. 3d 1208, 1210-1212 (9th Cir. 2015) (affirming dismissal of First Amendment retaliation claim where the speech at issue was voiced internally not publicly).

Though the FAC attempts to avoid pleading this detail, its allegations make clear that the speech occurred at a work meeting. *See* Ex. 1 (the Reprimand). Speech at such an event is inherently not of public concern and cannot ground a First Amendment claim. *See Turner*, 788 F.3d at 1211; *Murray*, 670 Fed.Appx. at 609.

     iii.    The Form of the Speech At Issue Gives Rise To a Clear Inference That Dr. Jensen's True Motivation In Speaking Was Defiance of His Supervisor Rather <u>Than Opining On an Issue of Public Concern</u>

The form of the speech is also considered in determining if it was of public interest. The speech here was in the form a written handout that Dr. Jensen wished to distribute directly to participants. This is significant because, as the FAC alleges it, there was an alternative form available to Dr. Jensen to engage in the exact same speech – he could have simply posted the document for any interested participant to see, as instructed by his supervisor. *See* FAC ¶ 33.

It is inferable from Dr. Jensen's insistence on communicating in the exact form desired that his true motivation was defiance of his supervisor. Such motive suggests the speech is not a matter of public concern. *See Turner*, 788 F.3d at 1210 (speech motivated by dissatisfaction with employer is not of public interest).

**E.  The FAC Does Not Adequately Allege That the Speech At Issue Related to Teaching or Academic Writing**

*Eng's* second prong effectuates the Supreme Court's holding in *Garcetti* by establishing that "plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee." *Eng,* 552 F.3d at 1071. *Demers* creates an exception to that prong where the speech at issue is "teaching and academic writing." *Demers*, 746 F.3d at 412.

The FAC does not allege that the speech at issue was in the form of "teaching." It also fails to allege that the communication was "academic writing." In *Demers*, the writing at issue consisted of (i) an ultimately published book concerning the role and function of social science research in society and (ii) a "plan" authored by the plaintiff which was widely distributed and contained a detailed proposal concerning the fundamental reorganization of the university at which plaintiff taught. *Demers* at 406-07, 413-15.

The FAC contains no allegation that the speech at issue was published, or publishable, work. And a review of the handout contained at Exhibit A shows that it consists largely of a pet criticism on a hyper-specific issue. It is also clear this was a hastily written summary of oral remarks that Dr. Jensen intended to deliver live but reduced to writing instead. *See* FAC ¶ 34. This is not of the same character as the academic writing found to have existed in *Demers*.

Failing to adequately allege teaching or academic writing within *Demers*, the FAC must allege that Dr. Jensen spoke in his private capacity to state a claim. *See Eng*, 552 F.3d at 1071. The FAC does not. Dr. Jensen was clearly at the Math Summit by virtue of his role as a public employee, not as a private citizen afforded the full suite of First Amendment protections.

**II.   The Cause of Action For Procedural Due Process Violations Should Be Dismissed**

Dr. Jensen's Fourth Cause of Action alleges that Defendants violated his procedural due process rights through the handling of the Termination Proceedings. To plead such a claim, Dr.

-16-

Jensen must plausibly allege (i) a property interest protected by the Constitution; (ii) deprivation of the interest; and (iii) lack of process. *See Portman v. Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1988). The FAC fails to plausibly allege deprivation of a property interest or a lack of process.

### A. **Dr. Jensen Fails to Allege the Deprivation of a Protected Interest**

The FAC alleges three protected interests: (i) avoiding termination, including by a biased hearing panel; (ii) Dr. Jensen's good name, reputation, and related concepts; and (iii) future employment opportunities. FAC. ¶¶ 122-124. The FAC fails to plausibly allege the deprivation of any of these.

### i.   The FAC Does Not Allege That Dr. Jensen Was Terminated

The FAC alleges that Dr. Jensen "still is[] a Community College Professor at TMCC." FAC. ¶ 9. He was not terminated and, accordingly, no deprivation of this interest is alleged. *See Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985) (due process violation not adequately alleged where state employee retained employment). Because he was not actually terminated, Dr. Jensen also fails to plausibly allege any actionable bias in the hearing panel.

### ii.   The FAC Does Not Adequately Allege The Existence or Deprivation of Dr. Jensen's Purported Interest In His Good Name

The FAC's allegations concerning Dr. Jensen's interest in his good name do not support a due process claim because they do not assert that he was subject to "[c]harges that carry the stigma of moral turpitude" such as dishonesty or immorality. *See Portman*, 995 F.2d at 907-08. The disciplinary actions for which Dr. Jensen sues assert insubordination and other managerial difficulties. *E.g.* Ex. 1 (Reprimand). These are like a charge of "inability to get along with others" which does not invoke a property interest in reputation. *See Portman*, 995 F.2d at 907.

And, the FAC fails to plausibly assert the deprivation of such an interest. It contains a vague allegation that "Plaintiff has been and will continue to be forced to tell other employers

about the disciplinary hearing, as well as family and friends . . ." FAC ¶ 125. But not a single, specific instance of this supposed harm is identified. Conclusory claims of reputational harm do not support due process claims. *See Zavareh v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 12-cv-02033-APG, 2013 WL 5781729, at \*7 (D. Nev. Oct. 17, 2013) (dismissing due process claim).

      iii.    The FAC Does Not Adequately Allege Deprivation of Future Employment <u>Opportunities</u>

Other than alleging this supposed property interest, the FAC fails to plead any facts that would support its deprivation. The FAC does not identify any "future employer" who did not hire Dr. Jensen because of Defendants. Thus the FAC fails to meet the minimal burden to aver some deprivation of the alleged property interest. *See Portman*, 995 F.2d at 904; *Phillips v. State Bar of Nevada*, No. 14-cv-2031-JCM, 2016 WL 829976, at \*4 (D. Nev. Mar. 3, 2016).

**B.**  <u>**The FAC Fails to Allege A Lack of Due Process As A Matter of Law**</u>

      i.    <u>The FAC Fails to Allege a *Prima Facie* Element of a Due Process Claim</u>

Among other things, a due process claim requires a plaintiff allege a lack of process. To do so, Dr. Jensen must plausibly allege the Termination Proceedings did not provide him (i) notice of the charges; (ii) an explanation of the supporting evidence; or (iii) an opportunity to present his side of the story. *See Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985). The FAC fails to allege any such facts, warranting dismissal of this claim. *See id.*

      ii.    The FAC, Through Plain Inference, Actually Pleads Dr. Jensen's Termination <u>Proceedings Were Fully Consistent With Due Process</u>

<u>First</u>, The FAC impliedly pleads Dr. Jensen received advance notice of the Termination Proceedings. Dr. Jensen alleges his termination hearing was pursuant to NSHE Handbook, Title 2, Chapter 5 § 5.13.2. FAC ¶ 70. That section incorporates the hearing procedures contained in Chapter 6 of the NSHE Handbook. *See* Ex. 4 at 7, § 5.13.2(b). Within Chapter 6 is Section 6.9.3,

which entitles Dr. Jensen to ten days' notice of the charges. *Id*. at 10-11. The FAC fails to allege Dr. Jensen did not receive this notice because he did. Where a plaintiff received notice of insubordination charges against him, due process is satisfied. *See Miller v. Sch. Dist.*, No. 02-cv-1641-JCM, 2008 WL 11385602, at *2 (D. Nev. Dec. 11, 2008).

Second, the FAC's allegations also reveal that Dr. Jensen received an explanation of the evidence against him in the Complaint and Charging Letter required by NSHE Handbook § 6.8.1 and 6.8.2(a). These are both placed at issue in the FAC. *See* FAC ¶¶ 67, 75-76; FAC p. 26, Prayer for Relief E(c) (seeking to expunge all materials related to Dr. Brown's investigation, which include the Complaint and Charging Letter). These documents may be considered on this Motion to Dismiss because they are incorporated by reference. *See Supra* at 5:8-12; Exs. 2 and 3. They provide a constitutionally sufficient "explanation" of the charges, meaning the FAC fails to adequately allege this prong. *See Brewster v. Bd. of Ed.*, 149 F.3d 971, 986 (9th Cir. 1998) (sufficient explanation of evidence provided in notice of the charges).

Third, under the NSHE Handbook provisions that the FAC alleges governed the Termination Proceedings, Dr. Jensen had the opportunity to present his side of the story through opening and closing statements, cross-examining TMCC's witnesses, calling his own witnesses, and introducing documents. *See supra* at 8:7-21 (summary of relevant provisions of the NSHE Code). The FAC does not allege any of these protections in the NSHE Code were denied.

       iii.    The Conduct Dr. Jensen Does Allege Does Not Support A Due Process Claim As A Matter of Law

Rather than plead the elements of a due process claim, the FAC points to supposedly wrongful conduct that is not relevant to such a claim.  For example, the FAC alleges that "Dr. Brown violated the Code for investigating Dr. Jensen when she had no authority to investigate

since she had not received a complaint." FAC ¶ 70. This is demonstrably incorrect: the "Complaint" is the document referenced in the FAC at ¶ 67 and attached as Exhibit 2.

Admittedly, the document does not have the word "Complaint" on it. But it plainly meets the NSHE Handbook § 6.8.1 definition of a complaint: it asserts that Dr. Jensen received two consecutive unsatisfactory ratings and references the relevant NSHE Code provisions which that conduct violated. Ex. 2. Several days later, Dr. Hilgersom appointed Dr. Brown as administrative officer, exactly as the NSHE Handbook contemplates she would do in response to a complaint. FAC ¶ 68; Ex.4 (NSHE Handbook) at 9, §§ 6.8.1 and 6.8.2(a). Ex. 2 is the Complaint.

Without explanation, the FAC also alleges that Dr. Ellsworth incorrectly applied the definition of "insubordination" to Dr. Jensen. FAC ¶ 48. The FAC cites to *State v. Bd. of Regents of Univ. of Nev.*, 70 Nev. 347, 366-67 (1954). In that case, the Supreme Court of Nevada held that "insubordination" means "willful disregard of express or implied directions, or such a defiant attitude as to be equivalent thereto." *Id.*

As alleged by Dr. Jensen, his conduct at the Math Summit fits this definition exactly. *See* FAC ¶¶ 30-43 (alleging repeated disregarded of express and implied directions from supervisor).

The FAC's other allegations about the various Defendants' violations of procedural due process rights are summarized *supra* at 7:5-21. Not a single one amounts to a plausible allegation that Dr. Jensen was denied notice and fair hearing as required by *Loudermill* or that the fulsome protections of the NSHE Code were not complied with.

**III.    Defendants In Their Official Capacities Have Eleventh Amendment Immunity**

Other than the Second Cause of Action, the claims in the FAC are pled against Defendants in both their official and unofficial capacities. State officials, including NSHE employees such as Defendants, are immune from suit in federal courts under the Eleventh Amendment. *See Johnson v. University of Nevada*, 596 F.Supp. 175, 176 (D. Nev. 1984)

-20-

(dismissing suit against NSHE entities because the Court "lacks jurisdiction because of the Eleventh Amendment"). And with respect to the Supplemental State Claims in particular, Defendants are immune from suit for injunctive relief in their official capacities. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 118-122, (1984). All causes of action against Defendants in their official capacities should be dismissed for these reasons.

The FAC attempts to evade this result with respect to the First Amendment retaliation claim by alleging this claim seeks "prospective relief." FAC ¶¶ 105-106.

However, claims for "prospective relief" create a "narrow exception" to Eleventh Amendment Immunity where the relief is prospective in nature and is based on ongoing violations of the plaintiff's federal constitutional or statutory rights. *Krainski v. Nev*, 616 F.3d 963, 967-68 (9th Cir. 2010). "Prospective relief" is forward-looking equitable relief that would compel future compliance, or forbid future non-compliance, with federal law. *See id*.

The FAC's allegations of "prospective relief" seek (i) an order expunging preexisting "negative personal files" and the retroactive adjustment of two years' of ratings in annual performance evaluations and (ii) monetary damages. FAC ¶¶ 105-106. This is not forward-looking equitable relief compelling Defendants to obey the law and thus is not "prospective".

## IV.   All Claims Against Defendants In Their Individual Capacity Should Be Dismissed On The Basis of Qualified Immunity

Other than its First Cause of Action, the FAC's claims are also pled against Defendants in their individual capacities. These should be dismissed under the doctrine of qualified immunity.

Qualified immunity precludes suit against government officials such as Defendants where (i) the facts as alleged do not violate a constitutional right; or (ii) the right was not clearly established at the time of the alleged misconduct.  *See J.K.J v. San Diego*, 17 F.4th 1247, 1258-

59 (9th Cir. 2021).  Plaintiff bears the burden of proving that the right was clearly established. *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021).

As discussed throughout, the FAC fails to allege facts sufficient to support claims for First Amendment Retaliation or violation of due process or equal protection rights or the state equivalent of those claims. Thus, the FAC fails to adequately allege a violation of any of Dr. Jensen's constitutional rights and does not articulate any right that was "clearly established" at any relevant time. *See Brewster* 149 F.3d at 981-82, 986-87 (holding qualified immunity applied where First Amendment and due process rights alleged were not clearly established).

**V.   The FAC Fails To State An Equal Protection Claim**

The FAC alleges violations of Dr. Jensen's rights under the Equal Protection Clause. The FAC must plausibly allege Defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). The FAC contains no mention of the class at issue. *See* FAC ¶¶ 140-45.

Even if Dr. Jensen's intent is to allege that he is a class of one, the allegations in the FAC still do not state a claim for which relief can be granted. This is because such claims cannot be asserted in the public employment context – which is what is alleged here – as a matter of law. "[T]he class-of-one theory of equal protection has no application in the public employment context" because "government offices could not function if every employment decision became a constitutional matter." *Engquist v. Dept. of Ag.*, 553 U.S. 591, 607 (2008).

**VI.   The Claims Asserted Under the Nevada Constitution Should Be Dismissed**

The FAC alleges violations of Article 1 § 9 of the Nevada Constitution, which is equivalent to the First Amendment. The facts are the same as those in the First Amendment

Claims. FAC ¶¶ 110-117. The FAC alleges violation of Article 1 § 8 of the Nevada Constitution, restating Dr. Jensen's due process claim. FAC ¶¶ 131-39. These claims should be dismissed.

First, the Supplemental State Claims should be dismissed because the federal claims should also be dismissed as discussed herein. *See Burch v. NC Department of Public Safety,* 158 F. Supp. 3d 449, 465 (E.D. N.C. 2016) (district court may dismiss supplemental state claims if federal claims are dismissed).

Second, novel issues of law prevent the Court from exercising supplemental jurisdiction. *See* 28 USC § 1367(c)(1); *Linnemeier v. Indiana University,* 155 F. Supp. 2d 1044, 1056 (N.D. Ind. 2001). The Supplemental State Claims are asserted under the Nevada Constitution against state employees in their individual capacities. The only case on whether a plaintiff may sue an individual capacity defendant under the state constitution holds that plaintiff may not bring such a suit. *S.O.C., Inc., v. Mirage Casino-Hotel,* 117 Nev. 403, 415-416 (2001). A novel issue of law is whether a plaintiff may sue a state employee in her individual capacity under the due process clause of the Nevada Const. Art. 1, § 8.

Third, the Supplemental State Claims should be dismissed to the extent asserted against Defendants in their individual capacities because Nev. Const. Art. 1, §9 does not govern private conduct. *See S.O.C.,* 117 Nev. at 415-416. The reasoning of *S.O.C.* should be extended to a due process claim under Nev. Const. Art. 1, §8(2) against defendants in their individual capacities.

Fourth, the Supplemental State Claims should be dismissed for the same reasons articulated above with respect to the corresponding federal claims under the First Amendment and due process provisions. Art. 1 § 9 is coextensive to, but no greater than the First Amendment. *S.O.C.,* 117 Nev. at 415-16. The same reasoning should apply to the due process claims. If the federal claims fail, so too must the coextensive state law claims.

-23-

**VII.**  **Dr. Jensen Is Not Entitled to the Declaratory Relief Requested**

The Seventh Cause of Action asks for declaratory relief raising the same issues as the First through Sixth Causes of Action.  "[W]here a plaintiff has alleged a substantive cause of action, a declaratory relief claim should not be used as a superfluous 'second cause of action for the determination of identical issues' subsumed within the first." *Jensen v. Quality Loan Service Corp.,* 702 F. Supp. 2d 1183 (E.D.Ca. 2010).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss and enter an order dismissing Dr. Jensen's First Amended Complaint in its entirety.

DATED March 15, 2022.

*/s/ John Albrecht*
John Albrecht, NV Bar No. 4505
General Counsel
Kiah D. Beverly-Graham, NV Bar No. 11916
Deputy General Counsel
Truckee Meadows Community College
2215 Raggio Parkway
Reno, Nevada 89512-1095
(775) 673-7396
(775) 673-7135 fax
john.albrecht@dri.edu
kiah.beverly@dri.edu

*Attorneys for Defendants*

-24-

## INDEX OF EXHIBITS

| Exhibit No. | Description of Document | Page Numbers |
|---|---|---|
| Exhibit 1: | Letter of Reprimand | 001-002 |
| Exhibit 2: | Administrative Complaint | 003 |
| Exhibit 3: | Charging Letter (attachments omitted) | 004-006 |
| Exhibit 4: | Excerpts from Nevada System of Higher Education Handbook/Code | 007-019 |