John M. Nolan, Esq. (NSBN 15790)
2750 Peavine Creek Road
Reno, Nevada 89523
jmnolan84@gmail.com

Michael Langton, Esq. (NSBN 290)
801 Riverside Drive
Reno, NV 89503
Telephone: (775) 329-3612
mlangton@sbcglobal.net

Mark Mausert, Esq. (NSBN 2398)
Sean McDowell, Esq. (NSBN 15962)
729 Evans Avenue
Reno, Nevada 89512
Telephone: (775) 786-5477
mark@markmausertlaw.com

*Attorneys for Plaintiff Lars Jensen*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

LARS JENSEN, an individual,

   *Plaintiff,*

  v.

NATALIE BROWN, in her individual and
official capacities as Administrative Officer at
Truckee Meadows Community College; JULIE
ELLSWORTH, in her individual and official
capacities as Dean of Sciences at Truckee
Meadows Community College; ANNE
FLESHER, in her individual and official
capacities as Dean of Math and Physical
Sciences at Truckee Meadows Community
College; KARIN HILGERSOM, in her
individual and official capacities as President of
Truckee Meadows Community College;
MARIE MURGOLO, in her individual and
official capacities as Vice President of
Academic Affairs at Truckee Meadows
Community College; MELODY ROSE, in her

Case No. 3:22-cv-00045-ART-CLB

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FIRST
AMENDED VERIFIED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

individual and official capacities as Chancellor
of the Nevada System of Higher Education,

*Defendants.*

Plaintiff Lars Jensen by and through his undersigned counsel herewith files his Response in Opposition to Defendants' Brown, et al., Motion to Dismiss the First Amended Complaint filed on March 15, 2022, (ECF No. 21)(the "MTD").  This Response in Opposition to the MTD is made and based upon following the Memorandum of Points and Authorities, the Verified Complaint (ECF No.1)(the "complaint") and exhibits thereto, the First Amended Verified Complaint (ECF No. 8)(the "FAC") and exhibits thereto, the Declaration of David Demers (ECF No. 31)("Demers Decl.") and exhibits thereto, the Declaration of Lars Jensen (ECF No. 32)("Jensen Decl.")and exhibits thereto, the exhibits and declarations filed in support of this Response in Opposition to the MTD, the pleadings and papers on file herein including documents attached to or incorporated into the pleadings, documents and information in the accompanying Request for Judicial Notice (ECF No. 30)(the "RJN"), and such other evidence and argument as the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The U. S. Supreme Court has warned against any actions that "chill that free play of the spirit which all teachers ought especially to cultivate and practice" since it "makes for caution and timidity in their associations by potential teachers." *Wieman v. Updegraff*, 344 U.S. 183, 195 (1952).    "Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and

die." *Sweezy v. N.H. ex rel Wyman*, 354 U.S. 234, 250 (1957).  A public institution of higher education in the State of Nevada should be a destination for intellectual diversity that meets the "marketplace of ideas" standard laid out by the U.S. Supreme Court's jurisprudence.  *See Keyishian V. Bd. Of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967). "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487 (1960).  "[S]tate colleges and universities are not enclave immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972).  "The mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973).  "[T]he point of all speech protection, which is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 574 (1995).

Instead, of allowing these constitutional principles to flourish Defendants have taken actions that have had a chilling effect on speech to both Dr. Jensen and the larger community. Dr. Jensen's constitutional claims as alleged in the FAC are not brought lightly and are like a large number of cases recently decided or currently pending in the federal court system.  This District Court has previously held that, "[t]he fact that other federal courts are currently wrestling with constitutional issues similar to those presented by Plaintiffs in this case constitutes further indicia that Plaintiffs' claims under the U.S. Constitution are not frivolous." *Fair Maps Nevada v. Cegavske*, 463 F.Supp.3d 1123, 1137 (D. Nev. 2020 May 29, 2020)

///

///

## II.   <u>SUMMARY OF CASE</u>

In this case, Defendants retaliated against Dr. Jensen for questioning the expenditure of money and the appropriate level of standards for mathematics curriculum for higher education in the State of Nevada. Dr. Jensen spoke on matters of public concern as a private citizen through attempted public comment, emails, and distribution of a handout addressing his concerns regarding the impact of math standards on the community.  *See* Jensen Decl., Ex. A, Ex. B, Ex. C; FAC ¶ 37.  The distribution of the handout was at an event open to the greater Truckee Meadows Community College (hereinafter "TMCC") community and later through electronic distribution.  FAC ¶ 26; Ex. C.  The distribution of handouts critical of higher education administration by faculty has been protected in Nevada since the seminal case of *State ex rel. Richardson* in 1954 during the McCarthy era.  *See State ex rel. Richardson v. Board of Regents*, 70 Nev. 347, 269 P.2d 265 (1954); *See* J. Dee Kille, Academic Freedom Imperiled: The McCarthy Era at the University of Nevada (2004).

Thereafter, Defendants, acting in their official and individual capacities, violated Dr. Lars Jensen's constitutional rights secured by the First and Fourteenth Amendments to the U. S. Constitution and rights secured by the Nevada Constitution by: (1) repeatedly retaliating against Dr. Jensen for his protected expression, (2) denying him procedural due process protections, and (3) treating him differently than other similarly situated professors.  Dr. Jensen's FAC more than adequately alleges facts that give rise to an "inference" of liability for each of the seven causes of action. The constitutional rights that Dr. Jensen was repeatedly denied by Defendants have been clearly established by case law from the U.S. Supreme Court and the Ninth Circuit.  In many cases for decades.  Defendants filed a MTD that fails the dismissal standard in federal court since it raises arguments that fail to take factual inferences in Dr. Jensen's favor.

Finally, Defendants seem to concede in their MTD that constitutional violations occurred, but focus their arguments on the adequacy of pleading.  They further assert that they are entitled to qualified immunity or Eleventh Amendment sovereign immunity and that all claims should be dismissed. MTD at 20-21.  Defendants do not deserve either defense given the clearly established case law. Their MTD ignores multiple precedential cases with facts that are almost identical to the issues in this case. In asking this Court to dismiss these claims, Defendants ignore clearly established case law and facts they find inconvenient.    Plaintiff Dr. Lars Jensen respectfully requests this honorable Court to deny the Defendants' MTD in its entirety for the reasons set forth herein.

## III.  <u>STATEMENT OF FACTS</u>

### A. Dr. Jensen – The Concerned Professor

According to the FAC, Dr. Jensen is a Community College Professor at TMCC in the Mathematics Department, which is a division of the Math and Physical Sciences Division.  FAC ¶ 9.  Dr. Jensen began professionally exercising his constitutional rights of free expression regarding the lowering of math standards and deterioration of shared governance since at least 2017.  *Id*. ¶¶ 2, 22.  As a faculty member, Dr. Jensen also has a obligation under the NSHE Handbook, Title 2, Chapter 2 § 2.1.3 to be "responsible for the maintenance of appropriate standards of scholarship and instruction."  *Id*. ¶ 21 The NSHE Handbook also defines and protects academic freedom for faculty.  *Id*. ¶ 1.

### B. TMCC and NSHE Lower Standards and Deteriorate Shared Governance

The FAC alleges that since Dr. Jensen was hired in 1996, he witnessed the deterioration of shared governance and the lowering of curriculum standards at TMCC.  *Id*. ¶¶ 9, 2, 20.  In the FAC, Dr. Jensen's email from February 13, 2018, titled "On the issue of Confidentiality" is

listed as an example of Dr. Jensen raising concerns. *Id.* ¶ 23.  That email, which was incorporated by reference, stated speculative concerns of Dr. Jensen regarding administration decision making, reprimands being given for "made-up reasons," firings without due process, administrators sexually assaulting faculty, and various other hypotheticals.  *See* Ex. A.

### C.  Math Standards Changed by NSHE Co-Requisite Policy

The Board of Regents for the NSHE passed a Co-Requisite Policy in June of 2019. FAC ¶ 24.  Following that announcement, Dr. Jensen developed concerns regarding the policy, which were communicated to math department faculty on December 18, 2019.  That email which is incorporated by reference stated specific concerns and examples regarding math standards and the impact of the co-requisite policy. *See* Ex. B The email also stated that Dr. Jensen had given a prior in person department presentation regarding these issues.  *Id.*

### D.  Dean Ellsworth's Math Summit

Dean Julie Ellsworth organized a Math Summit with the community to discuss how the Board of Regents of the NSHE Co-Requisite policy would be implemented at TMCC.  FAC ¶ 26.  The agenda for the event, which is incorporated by reference in the FAC, specifically states that "members from the broader TMCC community" were invited to attend.  *See* Ex. C   Further, the agenda specifically listed "Perspectives on Math Pathways at TMCC and the Co-Req Adventure" as a topic for discussion. *Id.*   During the perspective sharing time, Dr. Lars Jensen attempted to express his concerns regarding the implementation of the new co-requisite math requirements that were in the process of being implemented by TMCC and was denied the opportunity to speak by Dean Ellsworth. FAC ¶ 32.   All other attendees were allowed to speak if desired by Dean Ellsworth except Dr. Jensen.  FAC ¶¶ 28-29.  Dr. Jensen then requested again to

be allowed to speak in the same manner as the other attendees and Dean Ellsworth then directed him to use the parking lot.  FAC ¶ 33.

### E.  "On the Math Pathways - Looking Under the Hood" Dr. Jensen's Handout

Dr. Jensen then left the Math Summit and typed out his comments in his faculty office at TMCC.  FAC ¶ 34.  The handout expressed concerns regarding the co-requisite policy.  FAC ¶¶ 35-37.  Some of the concerns had been previously communicated by Dr. Jensen in emails and presentations.  *See* Ex. B  In the handout, Dr. Jensen specifically mentions the impact of the co-requisite policy on the community.  FAC ¶ 37.  During break time at the Math Summit, Dr. Jensen distributed the handout in multiple rooms.  FAC ¶¶ 38, 42, 43.  During the NSHE special hearing, multiple witnesses confirmed under oath that Dr. Jensen was professional and was not disruptive.  FAC ¶ 39.  Julia Hammett, Jeff Olson, Damien Ennis, and Keith Hooper have all filed declarations in support of Plaintiff's Response in Opposition to the MTD, which are attached as exhibits herein, that Plaintiff was not disruptive during the Math Summit.  *See* Ex. D, Ex. E, Ex. F, Ex. G.

### F.  Dr. Jensen was retaliated against for his Constitutionally Protected Speech

Dean Ellsworth physically picked up the handouts and had other participants return their copies to her.  FAC ¶ 40.  Dean Ellsworth made disparaging remarks to Dr. Jensen and told him that he had "made an error by defying her."  FAC ¶ 44.  On January 30, 2020, Dean Ellsworth sent Dr. Jensen a notice of reprimand for insubordination due to his "disruptive behavior" at the Math Summit. FAC ¶¶ 46-47.  The application of insubordination based on the holding from the Nevada Supreme Court in *State ex rel. Richardson v. Board of Regents*, 70 Nev. 347. 269, P.2d 265 (1954) was incorrectly applied to Dr. Jensen.  FAC ¶¶ 48-49.  Dr. Jensen filed a grievance on February 3, 2020, seeking vindication of his academic freedom and First Amendment rights,

but that was eventually denied by Chancellor Melody Rose. FAC ¶¶ 50, 58.  Dean Ellsworth thereafter began retaliating against Dr. Jensen by raising minor bureaucratic issues and by giving him unsatisfactory evaluations.  FAC ¶¶ 52, 54-60.  On March 30, 2020, Dean Ellsworth issued a formal letter of reprimand to Dr. Jensen. FAC ¶ 53.  The following academic year, Dean Flesher continued to take retaliatory employment actions against Dr. Jensen. FAC ¶¶61-67.  After giving Dr. Jensen an unsatisfactory annual evaluation Dean Flesher sent a letter to President Hilgersom notifying her that Dr. Jensen had received two consecutive unsatisfactory annual evaluations. FAC ¶ 67.

**G.  Dr. Jensen was denied Procedural Due Process**

President Hilgersom appointed Dr. Natalie Brown to be an administrative officer and investigate Dr. Jensen.  FAC ¶ 68.  The NSHE Handbook only allows a hearing when a faculty member receives two consecutive unsatisfactory ratings. FAC ¶¶ 68, 70.  The investigation was conducted over the summer when Dr. Jensen was off contract and only Dean Ellsworth and Dean Flesher were interviewed by Dr. Brown.  FAC ¶¶ 71-72.  Dr. Jensen was out of the country during the investigation and the investigation was rushed.  FAC ¶¶73-74.  Dr. Brown added additional charges against Dr. Jensen, which she had no authority to add.  FAC ¶¶ 75-76.  President Hilgersom then appointed her colleague who had an ongoing contract with NSHE as the Special Hearing Officer.  FAC ¶¶ 77-78.  President Hilgersom also refused to remove a biased committee member from serving on the special hearing committee. FAC ¶¶ 80-82.  From the appointment of Natalie Brown until the conclusion of the hearing Dr. Jensen was a victim of multiple procedural due process violations. FAC ¶¶ 68-86.

///

///

### IV.   LEGAL STANDARD

A 12(b)(6) motion to dismiss sets a high bar for the moving party to be successful and is "viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co. v. Hiscox, Inc,* 23 F.4th 1195, 1199 (9th Cir. 2022)(quoting *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 676n.7 (9th Cir. 1991)).   Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Supreme Court has held that civil rights cases only require a "short and plain statement of the claim." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).  When a court reviews a motion to dismiss "[a]ll material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party." *Judd v. Weinstein*, 967 F.3d 952, 956 (9th Cir. 2020)(quoting *Puri v. Khalsa*, 844 F. 3d 1152, 1157 (9th Cir. 2017)).  This District Court has held that "…to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."" *Buran v. Riggs,* 5 F. Supp. 3d 1212, 1217 (D. Nev. March 11, 2014)(quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 678 (2007)).

### V.   ARGUMENT

Dr. Jensen's FAC sufficiently pleads his §1983 claims for First Amendment retaliation, procedural due process, and equal protection.  The FAC also has clearly plead claims for declaratory relief and the Nevada state constitutional equivalent of the free speech and due process claims.  Moreover, Defendants are not entitled to qualified immunity or sovereign immunity because reasonable government officials in Defendants' position would have known that a college cannot retaliate against Dr. Jensen for exercising his clearly established constitutional rights.

To survive the pending MTD, Dr. Jensen only needs to show that he has plead facts that show it is "plausible" that Defendants violated the rights above. Dr. Jensen has clearly met that standard. Defendants have failed to meet their burden. As explained below, the Court should not dismiss Dr. Jensen's FAC because Defendants have failed to meet their heavy burden for a Rule 12(b)(6) dismissal standard.

## A. Dr. Jensen has sufficiently pleaded that Defendants retaliated against him because of his speech

The FAC adequately demonstrates clear facts that Defendants violated Dr. Jensen's free speech rights under the First Amendment of the U.S. Constitution and the Nevada Constitution. FAC ¶¶ 1-5, 18-67, 95-102. To successfully bring a First Amendment retaliation claim the Ninth Circuit has established a five factor inquiry that requires a public employee plaintiff show: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009). If the plaintiff establishes the first three elements, then the burden shifts to the government to prove elements 4 and 5. *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1098 (9th Cir. 2018) (quoting *Eng*, 552 F.3d at 1070-72).

### i.    Dr. Jensen spoke on matters of public concern

Under *Eng's* first prong, Dr. Jensen spoke on a matter of public concern. The scope of public concern is defined broadly by the Ninth Circuit "to permit the public to decide for itself

which issues and viewpoints merit its concern." *Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002)(quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). The test for determining whether a public employee's speech is a matter of public concern depends on whether it relates to "any matter of political, social or other concern to the community." *Johnson v. Multnomah County*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138,146 (1983)); *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 905 (9th Cir. 2021).   The Supreme Court in *Connick* also emphasized "the content, form, and context of a given statement, as revealed by the whole record."  *Connick,* 461 U.S.at 147.  The content of what was said by the employee matters most in making a determination of whether the speech is a matter of public concern and whether the information will "enable the public to make informed decisions about their government." *Gifford v. Hornbrook Fire Protection District*, 2021 WL 4168532, at 7 (E.D. Cal. Sept. 14, 2021)(quoting *Desrochers v. City of San Bernardino*, 572 F.3d 703 (9th Cir. 2009)).

First, the co-requisite policy involved major curriculum changes that would impact academic standards, grading, math curriculum, study programs, state funding, and the quality of graduates produced for the community. All of these are matters of public concern. *Johnson v. Lincoln University*, 776 F.2d 443, 451-52 (3d Cir. 1985); *Gibson v. Office of Atty. Gen., State of California*, 561 F.3d 920, 925 (9th Cir. 2009); *Ulrich*, 308 F.3d at 977-979; *Desrochers*, 572 F.3d at 709-714.

Second, in Dr. Jensen's handout that he distributed he clearly questions the use of public funds.  The Ninth Circuit and Supreme Court held that it is "clearly established that the misuse of public funds is a matter of public concern." *Grisen v. Hanken*, 925 F.3d 1097, 1111 (9th Cir. 2019)(quoting Johnson, 48 F.3d at 425).  In *Pickering* the court held that the question of whether

a school district needed additional funds was a matter of public concern. *Pickering v. Bd. Of Educ.,* 391 U.S. 563, 571 (1968).

Third, Dr. Jensen's handout raises issues related to whether "public officials are not discharging government responsibilities or are engaged in wrongdoing or breaches of public trust" and this qualifies as a matter of public concern. *Connick*, 461 U.S. at 146

Therefore, Dr. Jensen spoke on matters of public concern.

**ii.    Dr. Jensen's spoke at a public event as a private citizen**

The Ninth Circuit test for determining whether public employees speak pursuant to official duties is: (1) whether "the employee confined his communications to his chain of command"; (2) whether "the subject matter of the communication" fell within the plaintiff's regular job duties; and (3) whether the "employee sp[oke] in direct contravention to his supervisor's order[ ]." *Greisen* 925 F.3d at 1111(quoting *Dahlia v. Rodriquez*, 735 F.3d 1060, 1074-75 (9th Cir. 2019)(en banc).

Dr. Jensen is a community college professor, and his official responsibilities are to teach classes and perform service to the College. FAC ¶¶ 9, 19, 21.  The Math Summit on January 21, 2020, was an event that was opened to the "broader TMCC community." FAC ¶¶26; Ex. C.  The Math Summit was not required or part of Dr. Jensen's official responsibilities, he had no official duty to make the statements at issue, and he was not paid to perform any task at the event.  *See Eng*, 552 F.3d at 1071; *Garcetti v. Caballos*, 547 U.S. 410, 421 (2006).  Dr. Jensen attended on his own time and the distribution of the handout occurred during breaktime.

Further, in *Demers*, the 7-Step Plan was based on university committee service and the Court found that it was part of official duties. *Demers v. Austin,* 746 F.3d 402, 410 (9th Cir. 2014).  The

handout in this case was not part of any college committee or duty for Dr. Jensen.  Finally, Dr. Demers included his 7-Step Plan in his annual evaluation.  *Id.*

Based on the test above, Dr. Jensen's spoke as a private citizen.

## 1. The *Demers* Exception

Even if this court would find that the event was related to his official duties, the handout was speech "related to teaching and scholarship" and would therefore qualify under the exception set forth by the Ninth Circuit in *Demers*.  *See Demers*, 746 F.3d at 417.  The Ninth Circuit held in *Demers* that academic employee speech is protected under the First Amendment by the *Pickering* analysis if it is a (1) matter of public concern, and (2) outweighs the interest of the state in promoting efficiency of service.  *Id.*

Defendants MTD incorrectly applies the holding from *Demers* as an "exception" based on speech that is "teaching and academic writing."   The MTD deliberately leaves out the words "***related to***."   The actual test that this Court must apply is whether the speech in question is "speech ***related to*** scholarship or teaching."  *Demers* 746 F.3d at 406, 411, 414-415 The MTD asserted that the speech be "…published, or publishable, work." MTD at 16  However, the Court in *Demers* made no such requirement.  The MTD further mischaracterizes Dr. Jensen's handout as "pet criticism on a hyper-specific issue." *Id.*  In reality, Dr. Jensen's handout was highly similar to Dr. Demer's "two-page pamphlet."  *See* RJN Ex. 1; *See* Demers Decl. Ex. A  Dr. Jensen's handout was commenting on an NSHE policy that applied to all institutions of higher education in the State of Nevada. FAC ¶ 24

Defendants also cannot make claims of workplace efficiency.  The Supreme Court clarified that "efficiency" concerns are based on the "…employers' reasonable predictions of disruption." *Waters v. Churchill*, 511 U.S. 661 (1994).  For Defendants to meet their burden for

their MTD they must show the need to maintain discipline or harmony among coworkers or that the faculty was disruptive. *Pred v. Board of Public Instruction of Dade County, Florida*, 415 F.2d 851(5th Cir. 1969); *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503 (1969). The University must show by clear and convincing evidence that the speech interfered with the operation of the college. *Smith v. Losee*, 485 F.2d 334 (10th Cir. 1973), cert. denied, 417 U.S. 908 (1974). Moreover, the Ninth Circuit has held that official university faculty senate meetings, which are more formal than the Math Summit in question in this matter, have been held to be places where "…expression of opinions should be most unfettered." *Mabey v. Reagan*, 537 F.2d 1036 (9th Cir. 1976). To succeed, TMCC had to show extreme conduct like "raucous catcalls," attempting to stop the governor's motorcade, or creating a danger of violence. *Adamian v. Lombardi*, 608 E2d 1224, 1227-28 (9th Cir. 1979), cert. denied, 446 U.S. 938 (1980).

Here, there is no evidence that Dr. Jensen was disruptive and the distribution of the handout occurred during a break in the summit and therefore had no impact on the efficiency of the meeting. Moreover, Dr. Jensen presented multiple witnesses at the NSHE special hearing that all testified that he was not disruptive at the Math Summit. FAC ¶ 39.  Therefore, Dr. Jensen's First Amendment interest in engaging in the protected speech outweighs TMCC's interest in prohibiting the speech to promote efficiency. This position has been supported by multiple national organizations.  FAC ¶ 4.;  *See* RJN Ex. C, Ex. D, and Ex. E

### iii. Defendants reprimanded, negatively evaluated, and subjected Dr. Jensen to disciplinary hearings because they disliked the content of his speech

The third prong under *Eng*, requires that the plaintiff demonstrate that the state took an adverse employment action against the plaintiff and the speech was a substantial or motivating

factor in the adverse action. *Eng*, 552 F.3d at 1071. This is "purely a question of fact" and the Court "must assume the truth of the plaintiff's allegations." *Id.* Further the Ninth Circuit held in *Coszalter* that "an adverse employment action is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech" and that even adverse employment actions taken months later after the speech in question could still allow "a reasonable jury [to] infer that retaliation is a substantial or motivating factor." *Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003).

Dean Ellsworth stated to Dr. Jensen at the Math Summit that he had "made an error by defying her." FAC ¶ 44. Thereafter, Dean Ellsworth sent Dr. Jensen a letter of notice of reprimand on January 30, 2020. FAC ¶ 46. Dean Ellsworth issued a formal letter of reprimand to Dr. Jensen on March 30, 2020 based on the events of the Math Summit. FAC ¶ 53. Both Dean Ellsworth and Dean Flesher raised minor bureaucratic issues to Dr. Jensen after the Math Summit. FAC ¶¶ 54-55 63. Dean Ellsworth and Dean Flesher negatively evaluated Dr. Jensen based on the events at the Math Summit. FAC ¶¶ 56, 59, 62-64. Chancellor Rose denied Dr. Jensen's grievance based upon on violation of his free expression and academic freedom on July 21, 2021. FAC ¶ 66. Dean Flesher retaliated against Dr. Jensen again by sending a letter to Dr. Hilgersom that he had received two unsatisfactory evaluations. FAC ¶ 67. President Hilgersom authorized Dr. Brown to investigate Dr. Jensen and hold a disciplinary hearing. FAC ¶¶ 68-71.

Taking the above facts into consideration, the FAC more than adequately pleads that Dr. Jensen suffered multiple adverse employment actions and that his speech "was a substantial or motivating factor" for the repeated adverse employment actions.

///

### iv. Defendants did not have an adequate justification for treating Dr. Jensen differently from other members of the general public

Since Dr. Jensen has adequately plead the first three prongs under *Eng*, Defendants must show that they have an adequate justification for treating the employee differently from other members of the general public. *Eng,* 552 F.3d at 1070.  In the MTD, Defendants argue that they "had a legitimate interest in preventing the insubordinate conduct."  MTD at 12.  However, Dr. Jensen did not engage an insubordination.  Moreover, the events in question occurred during a break at the Math Summit – not during the Math Summit.  That is a critical distinction for this analysis.  Defendants had no authority to discipline Dr. Jensen for passing out pieces of paper at an event opened to the "broader TMCC community" during break time. *See* Ex. C  The Nevada Supreme Court in *State ex rel Richardson*, held that professors are not insubordinate for distributing articles on campus.  *See State ex rel. Richardson*, 70 Nev. at 366-368; Kille, *supra*.

Next, the MTD cited *Connick* for the proposition that "[w]hen a government employee personally confronts his immediate supervisor, the employing agency's institutional efficiency may be threatened[.]" MTD at 13 (quoting *Connick*, 461 U.S. at 153).  This fails to address facts as pleaded in the FAC.  First, Dean Ellsworth made disparaging remarks to Dr. Jensen and confronted him.  FAC ¶ 44.  Second, this occurred during a break in an event that was open to the broader TMCC community, which Dean Ellsworth had no authority. FAC ¶ 41.  Third, multiple witnesses at the hearing all testified under oath that Dr. Jensen was not disruptive at the event. FAC ¶ 39.    Finally, Defendants have not offered any evidence or support in the documents submitted to this Court or during the NSHE special hearing that there was a negative impact on efficiency or management of its personnel affairs.  Therefore, this argument fails.

Taking the above facts into consideration, the Defendants have not met their burden to show that they had an adequate justification for treating Dr. Jensen differently from other members of the public.

> **v.      Defendants would not have taken the adverse employment action absent the protected speech**

The fifth and final prong under *Eng*, shifts the burden to Defendants to show whether they would have taken the adverse employment action even absent the protected speech. *Eng,* 552 F.3d at 1070.  Under the Ninth Circuit case law Defendants essentially have to show that they "would have reached the same decision even in the absence of the [employee's] protected conduct." *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)(quoting *Ulrich*, 308 F.3d at 976-977).  Even Defendants admit in their MTD that Dr. Jensen had "long standing criticisms about how the new standards were to be implemented."  MTD at 2.  It can only be inferred that this is an admission that Dean Ellsworth's conduct at the Math Summit and after was based on her prior knowledge of Dr. Jensen's "long standing criticisms."  Further, the Reprimand provided as an exhibit to the MTD clearly states the adverse action was based solely on his constitutionally protected speech.  *Id.* Ex. 1.

Here, all of the adverse employment actions were based on the Dr. Jensen's protected expression.  Therefore, the Defendants fail under this prong.

> **B.  Dr. Jensen adequately plead that Defendants violated his Fourteenth Amendment Rights by denying him procedural due process**

The Due Process Clause of the Fourteenth Amendment commands "nor shall any State deprive any person of life, liberty, or property, without due process of law…."  U.S. Const. amend. XIV.  The U. S. Supreme Court has held that "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of

life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).  The requirement of procedural due process should "convey to the individual a feeling that the government has dealt with him fairly…." *Id* at 262.  "A section 1983 claim based upon procedural due process… has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4[th] 1058, 1066 (9th Cir. 2022)(quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).  The Supreme Court has held that "property interests—may take many forms" and that Plaintiff needs to show "a legitimate claim of entitlement" based on "existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-577 (1972).

Here, Dr. Jensen had a property interest in his right to academic freedom, right to maintain standards of curriculum, right to have the processes for faculty terminations followed, and right to not be charged with insubordination for distributing handouts. FAC ¶ 1, 21, 48-49, 51, 68-86, 97, 116.  Moreover, Dr. Jensen also had a liberty interest in his good name, reputation, and being free from the stigma of being defined as insubordinate.  Defendants deprived Dr. Jensen of all of these protected interests by their retaliatory actions.  Finally, there was a lack of process due to the repeated failures to follow the NSHE Handbook.

Furthermore, the unconstitutionally vague definition of "insubordination" failed to give Dr. Jensen adequate notice of what kind of conduct was prohibited by Defendants.  "Insubordination" is defined as "willful disregard of express or implied directions, or such defiant attitude to be equivalent thereto."  *See* NSHE Handbook, Title 3, Chapter1, Section 3, j-m; *State ex rel. Richardson*, 70 Nev. at 366-368.  Further, the case above specifically held that distribution of articles on campus that were critical of the administration is NOT insubordination.

*Id.* The Defendants' subjective, arbitrary, and contrary to state law application of insubordination did not provide faculty like Dr. Jensen notice of what type of conduct or expression is prohibited by Defendants. The FAC adequately alleges that Defendants failed to give against Dr. Jensen adequate notice due to this vague policy. FAC ¶¶ 46-49.

Dr. Jensen was also denied an impartial tribunal by Defendants. The Ninth Circuit has held that there are two independent ways to show a Plaintiff has been denied a "right to fair hearing before an impartial tribunal" which are "actual bias" or an "appearance of impartiality." *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995). President Hilgersom allowed a biased committee member to remain on Dr. Jensen's hearing committee. FAC ¶ 80. The individual had previously filed an unsubstantiated complaint against Dr. Jensen. *Id.* A private attorney was forced to be involved. FAC ¶ 82. These actions were improper. These allegations easily state a plausible claim of actual bias.

Further, as alleged in the FAC Defendants repeatedly failed to follow their own NSHE Handbook for procedures related to the NSHE special hearing that was held to determine whether Dr. Jensen would be terminated. FAC ¶¶ 68-86. Dr. Jensen has a property right to ensure that policies are followed.

For these reasons, the FAC plead a valid cause of action against Defendants for violating Dr. Jensen's procedural due process rights.

**C. Dr. Jensen adequately plead that Defendants violated his Fourteenth Amendment Rights by violating his equal protection rights**

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The U.S. Supreme Court has held that this means that "all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 472 U.S. 432, 439 (1985). Further, government actions or policies that infringe upon "personal rights protected by the Constitution" are subject to strict scrutiny. *Plyler v. Doe*, 457 U.S. 202, 217-218 (1982). The Supreme Court has held that a Plaintiff can be successful if they can demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This standard applies in the public employment context "when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Enquist v. Or. Dep't of Agric*., 553 U.S. 591, 605 (2008).

As alleged in the FAC, Defendants treated Dr. Jensen in a different manner than other similarly situated professors at TMCC because of his comments on matters of public concern. FAC. ¶¶29-33. Dr. Jensen's FAC describes at least seven different situations where Defendants treated him in a different manner than other similarly situated professors at TMCC. First, Dr. Jensen was denied the opportunity to speak during the Math Summit like other attendees. FAC ¶ 29. Second, Dean Ellsworth only denied Dr. Jensen the opportunity to distribute handouts at the Math Summit during break time. FAC ¶ 43. Third, Dean Ellsworth, applied syllabus polices to Dr. Jensen that did not apply to other faculty. FAC ¶ 54. Fourth, Dean Ellsworth, incorrectly applied the definition of insubordination only to Dr. Jensen when issuing him a letter of reprimand on March 30, 2020. FAC ¶ 53. Fifth, Dean Flesher applied minor bureaucratic matters to Dr. Jensen in a way that did not apply to all other faculty. FAC ¶ 63. Sixth, Defendants only subjected Dr. Jensen to a NSHE special hearing for termination based on his constitutionally protected speech. FAC ¶¶ 54-56, 61-64, 68-86. Finally, Defendants only

evaluated Dr. Jensen based on his constitutionally protected speech not on his yearly

performance.  FAC ¶¶ 54-56, 61-64.

In each instance above, Dr. Jensen was treated differently than other similarly situated

professors. Defendants have not shown any evidence or argument that they also retaliated or

initiated adverse employment actions for similarly situated professors that spoke in favor of the

NSHE policy.  In Dr. Jensen's FAC he clearly pleads that other individuals were able to make

comments at the Math Summit.  FAC ¶ 29.   Defendants cannot disfavor Dr. Jensen because of

the viewpoint of his constitutionally protected expression while favoring other professors with a

different viewpoint that they prefer.  *Carey v. Brown*, 447 U.S. 455, 463 (1980).

For these reasons, the FAC plead a valid cause of action against Defendants for violating

Dr. Jensen's equal protection rights.

### D.  Dr. Jensen has adequately plead that all Defendants are personally liable for violating Dr. Jensen's First and Fourteenth Amendment Rights

Each of the six listed Defendants were personally involved and liable for the harm they

caused to Dr. Jensen for depriving him of his constitutional rights.  The U.S. Supreme Court has

held that "to establish personal liability in a § 1983 action, it is enough to show that the official,

acting under color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*,

473 U.S. 159, 166 (1985).  Dr. Jensen has clearly alleged the Defendants were aware of the

retaliation and participated in the unconstitutional conduct. FAC ¶¶ 12-17, 60, 87-94, 97-100.  At

the motion to dismiss stage, this Court must accept these allegations as true.  Further, these

allegations are specific enough to connect Defendants to the adverse employment decisions that

are the basis of all of Dr. Jensen's causes of action.

*///*

i.      **Dr. Jensen's FAC pleads that Defendants DO NOT deserve Qualified Immunity.**

Defendants are not entitled to qualified immunity because Dr. Jensen has clearly plead his § 1983 allegations and there is a "case directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)  Further, the prior precedents, many of which have facts that are nearly identical to this case, gave Defendants "fair warning" that their conduct was in violation of law and unconstitutional.  *See Hope v. Pelzer*, 536 U.S. 730 (2002).  The qualified immunity inquiry involves two sequential questions: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the[official's] conduct violated a constitutional right?" and (2) "if a violation could be made out on a favorable view of the parties' submissions, ... [was] the right ... clearly established ... in light of the specific context of the case[?]" *Eng*, 552 F.3d at 1067(quoting *Saucier v. Katz*, 533 U.S. 194, 201(2001). The first prong of the qualified immunity analysis is met under the facts as plead in Dr. Jensen's FAC.

The second prong of the qualified immunity analysis requires a showing that the right "was clearly established" at the time of Defendant's misconduct.  *Capp v. County of San Diego*, 940 F.3d 1046 (9th Cir. 2019).  The Ninth Circuit has held that the "relevant inquiry is whether" the Defendants knew "the state of the law gave [] fair warning that their conduct was unconstitutional." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013)(quoting *Hope v. Peltzer*, 536 U.S.  730, 741 (2002); *Nicholson v. City of Los Angeles*, 935 F.3d 685 (9th Cir. 2019)(quoting *Kisela v. Highes,* 584 U.S. -----, 138 S. Ct. 1148, 1152 (2018)(per curiam)).   It has been clearly established, in many cases for decades, by the U.S. Supreme Court and the Ninth Circuit that public employees cannot be punished for engaging in constitutionally protected speech. *Connick*, 461 U.S. at 142; *Rankin*, 483 U.S. at 383; *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Demers*, 746 F.3d 402, 417, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274 (1977); *Perry v. Sindermann*, 408 U.S. 593 (1972).  Defendants argue that Dr. Jensen did not adequately allege a violation of a constitutional right that was "clearly established."  MTD at 22  However, this argument fails since Dr. Jensen clearly plead First Amendment retaliation and even cited to the *Demers* case multiple times in his FAC.  FAC ¶¶ 1, 21.  Defendants know they cannot retaliate because they disfavor constitutionally protected expression.  Further, the law regarding what protection professors receive under the First Amendment is clearly established in the Ninth Circuit. *Demers,* 746 F.3d 402, 417.

Dr. Jensen has clearly plead plausible causes of action of First Amendment retaliation, equal protection, and procedural due process that have been clearly established.  Therefore, Defendants are not entitled to qualified immunity for any claim.

### ii.    Dr. Jensen may recover damages against Defendants in their individual capacities and prospective relief in their official capacities

Dr. Jensen properly sued Defendants in their official and individual capacities.  The Eleventh Amendment to the U.S. Constitution does not stop Dr. Jensen from recovering damages against Defendants in their individual capacities. *Graham*, 473 U.S. 159.  The doctrine of sovereign immunity for the Eleventh Amendment does not apply to claims for prospective relief against Defendants in their official capacities. *Ex parte Young*, 209 U.S. 123 (1908).  Dr. Jensen has made multiple claims for valid prospective relief in his FAC.  Each of these claims are not compensatory but are designed to compel compliance with federal and constitutional law.  This is exactly the kind of equitable relief needed to end the continuing violations of federal law by Defendants.  Dr. Jensen's claims meet the standard set forth by the U.S. Supreme Court in *Ex Parte Young*.

Further, Dr. Jensen is entitled to declaratory and injunctive relief. *Green v. Mansour*, 474 U.S. 64 (1985). The FAC also alleges plausible causes of action under the Nevada constitution.

## VI.   **CONCLUSION**

Dr. Jensen clearly pleaded in his FAC that Defendants' retaliatory acts violated his constitutional rights. These causes of action were not vague, conclusory, or contradictory. Further, these rights were clearly established. Defendants' defenses of qualified immunity and Eleventh Amendment sovereign immunity both fail as a matter of law. Even if this Court is so moved to grant any part of Defendants MTD, Plaintiff would request leave to amend his FAC.

For the foregoing reasons, Plaintiff Dr. Lars Jensen respectfully requests this Court to deny Defendants' MTD in its entirety.

DATED: April 13, 2022                    Respectfully submitted,

By:  /s/ John M. Nolan
John M. Nolan, Esq. (NSBN 15790)
2750 Peavine Creek Road
Reno, Nevada 89523
jmnolan84@gmail.com

/s/ Michael Langton
Michael Langton, Esq. (NSBN 290)
801 Riverside Drive
Reno, NV 89503
Telephone: (775) 329-3612
mlangton@sbcglobal.net

/s/ Mark Mausert
Mark Mausert, Esq. (NSBN 2398)
Sean McDowell, Esq. (NSBN 15962)
729 Evans Avenue
Reno, Nevada 89512
Telephone: (775) 786-5477
mark@markmausertlaw.com

*Attorneys for Plaintiff Lars Jensen*

## INDEX OF EXHIBITS

| Exhibit # | Description | Number of Pages |
|---|---|---|
| A | Lars Jensen Email titled on "On the issue of Confidentiality" dated February 13, 2018 | 1 |
| B | Lars Jensen email titled On the State of Academia at TMCC dated December 18, 2019 | 2 |
| C | Math Summit Agenda | 3 |
| D | Declaration of Keith Hooper | 2 |
| E | Declaration of Julia Hammett | 3 |
| F | Declaration of Damien Ennis | 2 |
| G | Declaration of Jeff Olsen | 2 |