1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                     * * *

9    LARS JENSEN, an individual,                  Case No. 3:22-cv-00045-LRH-CLB

10                              Plaintiff,         ORDER

11         v.

12   NATALIE BROWN, in her individual and official
     capacities as Administrative Officer at Truckee
13   Meadows      Community      College;   JULIE
     ELLSWORTH, in her individual and official
14   capacities as Dean of Science at Truckee Meadows
     Community College; ANNE FLESHER, in her
15   individual and official capacities as Dean of Math
     and Physical Sciences at Truckee Meadows
16   Community College; KARIN HILGERSOM, in her
     individual and official capacities as President of
17   Truckee Meadows Community College; MARIE
     MURGOLO, in her individual and official capacities
18   as Vice President of Academic Affairs at Truckee
     Meadows Community College; MELODY ROSE, in
19   her individual and official capacities as Chancellor
     of the Nevada System of Higher Education,
20
                                 Defendants.
21

22

23        Before the Court is Defendants Natalie Brown, Julie Ellsworth, Anne Flesher, Karin

24   Hilgersom, Marie Murgolo, and Melody Rose's (collectively, "the Administrators") Motion to

25   Dismiss Plaintiff Lars Jensen's ("Dr. Jensen") First Amended Complaint. ECF No. 21.  Dr. Jensen

26   filed a response in opposition to the motion, in which he requested oral argument (ECF No. 33),

27   and the Administrators replied (ECF No. 34). Also before the Court is Dr. Jensen's Motion to

28   Amend Response in Opposition to the Administrators' motion to dismiss. ECF No. 44. The

                                            1

Administrators filed a response in opposition (ECF No. 45) and Dr. Jensen replied (ECF No. 46). In both his motion to amend and reply in support of the motion to amend, Dr. Jensen requested oral argument. *See* ECF Nos. 44, 46. The Court denies Dr. Jensen's requests for oral argument. For the reasons articulated below, the Court denies Dr. Jensen's motion to amend and grants the Administrators' motion to dismiss.

## I.    BACKGROUND

This matter primarily involves alleged violations of civil rights concerning higher education employment at Truckee Meadows Community College ("TMCC") and, by extension, the Nevada System of Higher Education ("NSHE"). Dr. Jensen is a Community College Professor in the Math and Physical Sciences Division of TMCC's Mathematics Department. ECF No. 1 at 4. Natalie Brown is the Executive Director of the Advisement and Transfer Center at TMCC ("Dr. Brown"); Julie Ellsworth was the Dean of Sciences at TMCC at all relevant times to this action ("Dr. Ellsworth"); Anne Flesher is the Dean of Math and Physical Sciences at TMCC ("Dean Flesher"); Karin Hilgerson is the President of TMCC ("President Hilgersom"); Marie Murgolo was the Vice President of Academic Affairs at TMCC at all relevant times to this action ("Dr. Murgolo"); and Melody Rose is the Chancellor of NSHE ("Chancellor Rose"). *Id*. at 4–6.

Generally, the First Amended Complaint alleges that the Administrators sought to discipline, retaliate, and punish Dr. Jensen after he voiced concerns about the lowering of curriculum standards and the deterioration of shared governance at TMCC. ECF *Id*. at 2–6. TMCC hired Dr. Jensen on January 16, 1996, and he tenured on July 1, 1999. *Id*. at 6. Dr. Jensen has taught varying levels of mathematic courses during this time which range from algebra to calculus to statistics to college physics. *Id*. Dr. Jensen contends that throughout his employment, TMCC has continually altered its standards to make it easier for students to complete math courses and ignored internal procedures relating to shared governance. *Id*. at 6, 7. Dr. Jesen admits he has consistently voiced his concerns to TMCC on these two issues in different ways which include various email communications and a handout he distributed at a function. *Id*. at 7–9.

In June of 2019, the NSHE Board of Regents passed the "Co-Requisite Policy" and on January 21, 2020, TMCC organized the "Math Summit" to discuss how the Co-Requisite Policy

would be implemented.[1] *Id.* at 7. During the Math Summit, Dr. Ellsworth hosted an audience question and answer session in which Dr. Jensen claims that Dr. Ellsworth allowed members of the audience to make general comments but twice-denied Dr. Jensen the opportunity to voice his concerns and instructed him to use the "parking lot" for his comments.[2] *Id.* at 7, 8. At that time, Dr. Jensen departed the Math Summit, went to his office, and typed and printed a handout entitled "On Math Pathways – Looking Under the Hood" which outlined his Co-Requisite Policy concerns. *Id.* at 8. Dr. Jensen returned to the Math Summit and distributed the handout to attendees in different rooms during a break. *Id.* at 9. According to Dr. Jensen, Dr. Ellsworth began to collect the distributed handouts, grew angry, and asked him to step outside for a private conversation in which she made disparaging remarks. *Id.* at 9, 10.

Shortly after, on January 30, 2020, Dr. Ellsworth sent Dr. Jensen a notice of reprimand, which included a proposed letter of reprimand, that characterized Dr. Jensen's behavior at the Math Summit as "insubordination." *Id* at 10. Dr. Jensen claims that Dr. Ellsworth improperly classified his behavior as "insubordination" as a form of retaliation against him. *Id.* On February 3, 2020, Dr. Jensen filed a grievance seeking vindication of his academic freedom and First Amendment right against Dr. Ellsworth. *Id.* On February 5, 2020, Dr. Jensen sent an email to TMCC's faculty listserv entitled "Lowering Standards is Criminal – Literally." *Id.* at 11. By February 11, 2020, Dr. Jensen claims that he felt forced and pressured by Dr. Ellsworth to offer his resignation as chair and as a member of the tenure committee. *Id.* On March 30, 2020, Dr. Ellsworth placed a letter of reprimand in Dr. Jensen's file. *Id.* Thereafter, Dr. Ellsworth also raised minor issues about Dr. Jensen's class syllabus policies, another retaliatory act according to Dr. Jensen. *Id.*

On May 19, 2020, Dr. Ellsworth allegedly ignored the department chair's rating recommendation of "Excellent 2" as to Dr. Jensen's annual performance evaluation and changed the rating to "Unsatisfactory," the lowest possible rating at TMCC. *Id.* Dr. Jensen filed additional

---

[1]  According to Dr. Jensen, the Co-Requisite Policy passed by the NSHE Board of Regents "put students into a college level math class, possibly with an additional 1-3 co-req credits to fill any holes they may have in Algebra 1-2 or Geometry." ECF No. 8-1 at 2.

[2]  The "parking lot" is a whiteboard in TMCC's faculty meeting room to which participants may affix written comments and concerns. ECF No. 21 at 2.

grievances in response to the incidents with Dr. Ellsworth, but on November 24, 2020, Chancellor Rose denied Dr. Jensen's grievances. *Id*. at 12.

Along similar lines, Dr. Jensen alleges that Dean Flesher cited minor issues as her justification for changing Dr. Jensen's annual performance review from a recommended "Excellent" to "Unsatisfactory." *Id*. at 12.  Dr. Jensen also claims that Dean Flesher applied criteria to his annual performance review that was not equally applied to other annual performance reviews. *Id*. Dr. Jensen filed one grievance related to the incident with Dean Flesher and on July 27, 2021, Chancellor Rose denied the grievance. *Id*. at 12, 13.

On June 2, 2021, Dean Flesher wrote a letter to President Hilgersom notifying her that Dr. Jensen had received two consecutive "Unsatisfactory" annual performance evaluations. *Id*. at 13. Around June 16, 2021, President Hilgersom appointed Dr. Brown to investigate Dr. Jensen for a disciplinary hearing.[3] *Id*. at 13. Dr. Brown's investigation took place over the summer with faculty and included interviews with Dr. Ellsworth and Dean Flesher. *Id*. Dr. Jensen claims that the investigation was rushed, lasting only 21-days, and that his request to delay the proceedings until he was back in the country was ignored by Dr. Brown. *Id*. at 13, 14. According to Dr. Jensen, Dr. Brown used the investigation and charging letter to fabricate a basis to terminate his employment. *Id*. at 14.

On July 12, 2021, President Hilgerson appointed Mark Ghan as the Special Hearing Officer for Dr. Jensen's disciplinary hearing. *Id*. However, Ghan was later removed by President Hilgerson after Dr. Jensen raised a challenge for cause due to the existence of an ongoing contract between Ghan and NSHE. *Id*. Dr. Jensen alleges that President Hilgersom refused to order an allegedly biased committee member, Andy Hughes, to be removed from the faculty committee at the disciplinary hearing.[4] *Id*.

---

[3]   Dr. Jensen contests the validity of Dr. Brown's appointment to investigate because (1) no complaint was filed against him, and (2) under the NSHE Handbook, when a faculty member receives two consecutive unsatisfactory rankings the requirement is to hold a hearing only. ECF No. 8 at 13.

[4]   According to Dr. Jensen, Hughes had previously submitted a complaint of discrimination against Dr. Jensen that was investigated and dismissed by TMCC's Human Resources Department. ECF No. 1 at 14.

4

Dr. Jensen argues that the pattern of actions taken by the Administrators demonstrates a concerted effort to punish and retaliate against him for his handout distribution at the Math Summit, and his criticism of the deterioration of shared governance at TMCC. *Id*. at 15. Dr. Jensen further claims that the Administrators' actions caused a deprivation of his rights and proximately caused economic and emotional damages. *Id*. at 16. Dr. Jensen's First Amended Complaint alleges seven causes of action: (1) First Amendment Retaliation under 42 U.S.C. § 1983, against all the Administrators in their official capacities; (2) First Amendment Retaliation under 42 U.S.C. § 1983, against all the Administrators in their individual capacities; (3) Violation of the Nevada Constitution, Article I § 9, against all the Administrators; (4) Violation of Procedural Due Process Rights under  42 U.S.C. § 1983, against Dr. Brown, President Hilgersom, and Dean Flesher; (5) Violation of the Nevada Constitution, Article I § 8, against Dr. Brown, President Hilgersom, and Dean Flesher; (6) Violation of the Fourteenth Amendment Equal Protection Clause under 42 U.S.C. § 1983, against all the Administrators; and (7) Declaratory Relief under 28 U.S.C. §§ 2201, *et seq*., against all the Administrators. *Id*. at 19–24. The Administrators filed a motion to dismiss Dr. Jensen's First Amended Complaint. ECF No. 21. The motion is addressed below.

## II.   LEGAL STANDARD

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

///

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678–79 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations and citations omitted)). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the [c]omplaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels—Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations and citations omitted).  The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

///

1

**III.    DISCUSSION**

2

    **A.    Eleventh Amendment Immunity**

3

    The Eleventh Amendment "bars suits against the State or its agencies for all types of relief,

4

absent unequivocal consent by the state." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys.*

5

*of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citations omitted). Such immunity extends to

6

state officials, shielding them from suits alleged against them in their official capacities. *Id*. Here,

7

the Administrators argue that all causes of action against them in their official capacities should

8

be dismissed based on Eleventh Amendment immunity because they are NSHE employees. ECF

9

No. 21 at 20, 21.

10

    In the Ninth Circuit, Eleventh Amendment immunity extends to NSHE and its constituent

11

entities as agencies of the State of Nevada. *See Johnson v. Univ. of Nevada*, 596 F. Supp. 175, 178

12

(D. Nev. 1984) (concluding that Nevada's university system operates as a branch of state

13

government so that its entities are captured within the meaning of the Eleventh Amendment); *see*

14

*also Krainski*, 616 F.3d at 968 (holding that the plaintiff may not bring an action against the

15

University of Nevada, Las Vegas under the Eleventh Amendment); *see also Disabled Rights*

16

*Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883 n. 17 (9th Cir. 2004) (noting NSHE's

17

immunity from suit under the Eleventh Amendment). Here, there is no question that TMCC is an

18

NSHE entity for purposes of Eleventh Amendment immunity.

19

    The Ninth Circuit also recognizes that Eleventh Amendment immunity extends to NSHE

20

employees in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

21

(1989) (reasoning that actions against state officials in their official capacities are not suits against

22

the official, but suits against the official's office under the Eleventh Amendment); *see also*

23

*Krainski*, 616 F.3d at 967–68 (concluding that the district court did not err in dismissing plaintiff's

24

claims against UNLV employees in their official capacities under the Eleventh Amendment).

25

Thus, there is no question that the Eleventh Amendment immunity applies to the Administrators

26

in their official capacities; they are all employees of TMCC or NSHE itself.

27

    However, there is a narrow exception to Eleventh Amendment immunity "where the relief

28

sought is prospective in nature and is based on an ongoing violation of the plaintiff's *federal*

constitutional or statutory rights." *Krainski*, 616 F.3d at 967–68 (citation omitted) (emphasis original). Here, Dr. Jensen argues that the exception should apply because he seeks "prospective relief" from the Administrators in their official capacities. ECF No. 33 at 23. The Administrators question whether the "prospective relief" Dr. Jensen claims to seek is truly forward-looking injunctive relief as to trigger the exception. ECF No. 34 at 10.

Whether relief sought is prospective or retrospective is based on *Ex parte Young*, 209 U.S. 123 (1908), and a litany of cases that followed.

> *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence

*Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). In deciding whether relief is prospective and based on an ongoing violation of federal rights, courts "look to the substance rather than to the form of the relief sought[.]" *Id*. at 279. An example of prospective relief that triggered the immunity exception was observed in *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836 (9th Cir. 1997). In that case, the Ninth Circuit reversed the district court's dismissal of a plaintiff's § 1983 claim aimed at an official capacity defendant because plaintiff sought reinstatement as a laboratory employee which constituted proper prospective injunctive relief. *Id*. at 837. The Ninth Circuit reasoned that the plaintiff in *Doe* was "not attempting to recover lost wages or other accrued benefits by arguing that their continued withholding is an ongoing violation" but simply sought job reinstatement without any compensation. *Id*. at 840.

Conversely, relief that is not prospective for purposes of the immunity exception includes relief "expressly denominated as damages" because it "serves to compensate a party injured in the past by an action of a state official in his official capacity[.]" *Papasan*, 478 U.S. at 278 (citation omitted). Relief that is referred to or styled as "prospective" but equates to "an award of damages for a past violation of federal law" does not trigger the exception to Eleventh Amendment immunity. *Id*.

///

The only relief specifically labeled as "prospective" by Dr. Jensen in the First Amended Complaint is some of the relief he seeks from the Administrators in their official capacities in conjunction with his first cause of action. *See* ECF No. 8 at 19. Dr. Jensen describes this relief as "relief from defendants for prospective compensation from the date of judgment for salary adjustments he would have received had he not received the unlawful performance reviews" and "prospective relief against the defendants acting in their official capacities for full expungement of all negative personal files, return of his 2019-2020 annual performance evaluation to 'excellent', and return of his 2020-2021 annual performance evaluation to 'excellent.'" ECF No. 8 at 19. Although Dr. Jensen claims to seek "prospective relief" as to trigger the exception, the specifics of his two requests reveal that he seeks retrospective relief to remedy a past violation of federal law. Essentially, Dr. Jensen requests (1) monetary compensation for lost salary, and (2) retroactive expungement and restoration of past performance reviews. Such requests more closely resemble recovery of lost wages than true prospective relief addressing ongoing violations. Just because relief is characterized as "prospective" does not render true. *See Ulaleo v. Paty*, 902 F.2d 1395, 1399 (9th Cir. 1990) ("[s]imply asking for injunctive relief and not damages does not clear the path for a suit.").

Because the Ninth Circuit has expressly held that the Eleventh Amendment "bars suits against state officials in their official capacities when the relief sought is retrospective or compensatory in nature," *Han v. U.S. Dep't of Just*., 45 F.3d 333, 338 (9th Cir. 1995), the Court finds that the narrow exception to Eleventh Amendment immunity does not apply here. *See Papasan*, 478 U.S. at 280 (concluding plaintiff's request for prospective relief was "essentially equivalent" to a one-time restoration of lost trust corpus); *see also Edelman v. Jordan*, 415 U.S. 651, 665 (1974) (reasoning that a district court's award of retroactive benefits more closely resembled a compensatory money damages award for past violations of federal law than it did an award for prospective injunctive relief); *Green v. Mansour*, 474 U.S. 64, 68 (1985) (holding that "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." (citation omitted)).

///

For these reasons, the Court finds that the Administrators are immune from suit in their official capacities under the Eleventh Amendment. The Court also finds the narrow "prospective injunctive relief exception" to Eleventh Amendment immunity does not apply. Accordingly, the Court dismisses Dr. Jensen's constitutional claims against the Administrators in their official capacities with prejudice.

However, to the extent that Dr. Jensen seeks declaratory and injunctive relief from the Administrators in their official capacities, such claims are not barred by the Eleventh Amendment.[5] *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) (stating that the Eleventh Amendment "does not bar actions for declaratory . . . relief." (citation omitted)); *see also Jackson v. Hayakawa*, 682 F.2d 1344, 1351 (9th Cir. 1982) ("[t]he Eleventh Amendment does not bar actions for injunctive or declaratory relief against state officials sued under 42 U.S.C. § 1983."). Dr. Jensen's sixth cause of action for declaratory relief is addressed herein in Sections III.B.3 and III.D.

**B.    Qualified Immunity Defense**

The Administrators also claim qualified immunity with respect to Dr. Jensen's claim against them in their individual capacities. ECF No. 21 at 21, 22. While Eleventh Amendment immunity bars federal court action for damages and retroactive relief against state officials in their official capacities, it does not bar such claims against the state officials in their personal capacities. *Pena v. Gardner*, 976 F.2d 469, 472–73 (9th Cir. 1992), as amended (Oct. 9, 1992). At the same time, however, an "official sued in his personal capacity, although deprived of [E]leventh [A]mendment immunity, may assert a defense of qualified immunity." *Id.* at 473 (citation omitted). As such, the Court addresses the Administrators' asserted qualified immunity defense with regard to Dr. Jensen's claims alleged against them as individuals.

Generally, state officials sued in their individual capacities are entitled to qualified immunity from suits for damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Krainski*, 616

---

[5]    This finding, of course, is subject to and does not incorporate Dr. Jensen's demands for "prospective relief" that the Court has found to be tantamount to retrospective awards for damages. That relief is clearly barred by the Eleventh Amendment as held in this Order.

F.3d at 968. More specifically, whether qualified immunity applies depends on two distinct inquiries: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Id*. (citation omitted). "Courts may begin with either prong of the analysis." *Cates v. Stroud*, 976 F.3d 972, 978 (9th Cir. 2020). The Court finds that the defense of qualified immunity applies to the remaining constitutional claims against the Administrators in their individual capacities as outlined below.

1.   The Court dismisses Dr. Jensen's second cause of action against the Administrators in their individual capacities based on qualified immunity because Dr. Jensen fails to clearly establish the right at issue in light of the specific context of this case.

Listed as the second cause of action in the First Amended Complaint, Dr. Jensen alleges that the Administrators, in their individual capacities, retaliated against him for his speech in violation of 42 U.S.C. § 1983. ECF No. 8 at 19, 20. As to the two qualified immunity defense inquiries, Dr. Jensen claims that the facts as alleged in the First Amended Complaint show the Administrators conduct violated a constitutional right, and that he clearly established the right at issue in this case because he clearly pled First Amendment retaliation, the Administrators knew they could not retaliate, he cited to *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014), and also established what protection professors receive under the First Amendment in the Ninth Circuit.[6] ECF No. 33 at 22, 23. The Administrators reiterate their argument that Dr. Jensen fails to show a clearly established right because he fails to identify on-point precedent and relies on broad assertions as to the First Amendment. ECF No. 34 at 11.

The Court begins its analysis with the second inquiry as it is dispositive here. It is the plaintiff's burden to prove that "the right allegedly violated was clearly established at the time of the alleged misconduct." *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021), cert. denied, 142 S. Ct. 898 (2022) (quotation omitted). "The contours of the right 'must be sufficiently clear that a

---

[6]   Dr. Jensen's first citation to *Demers*, reads: *"Demers v. Austin*, 746 F.3d 1091 (9th Cir. 2014)." ECF No. 8 at 3. The correct citation for *Demers* is *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014). The Court continues its analysis with the understanding that Dr. Jensen meant to cite the actual Ninth Circuit *Demers* case found at 746 F.3d 402.

1  reasonable official would understand that what he is doing violates that right.'" *Grabowski v.*

2  *Arizona Bd. of Regents*, 69 F.4th 1110, 1122–23 (9th Cir. 2023) (quoting *Hope v. Pelzer*, 536 U.S.

3  730, 739 (2002)). While caselaw does not require the plaintiff to point to "a case directly on point

4  for a right to be clearly established," it does require the plaintiff to point to "existing precedent"

5  that "place[s] the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73,

6  79 (2017) (quotations and citations omitted).

7      Here, Dr. Jensen fails to show that the right allegedly violated was clearly established at

8  the time of the alleged misconduct. Throughout the First Amended Complaint, Dr. Jensen

9  consistently uses broad-stroke language and generalized terms to describe the right at issue in this

10  case including "free speech rights;" "free expression;" "First Amendment rights;" "fully protected

11  speech;" and "speech rights." *See generally* ECF No. 8. Such high-level language, paired with

12  only three citations—*Demers*, 746 F.3d 402, the First Amendment, and 42 U.S.C. § 1983—do not

13  clearly establish the specific right at issue in this particular case. Dr. Jensen's general

14  characterization of his speech rights in the First Amended Complaint "is precisely the broad-based

15  characterization that the Supreme Court has forbidden in the qualified immunity context."

16  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 980 (9th Cir. 1998) (citing

17  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[i]t should not be surprising, therefore, that

18  our cases establish that the right the official is alleged to have violated must have been 'clearly

19  established' in a more particularized, and hence more relevant, sense" so that "a reasonable official

20  would understand that what he is doing violates that right.")). "[B]road rights must be

21  particularized before they are subjected to the clearly established test." *Id*. at 977 (quoting *Kelley*

22  *v. Borg*, 60 F.3d 664, 667 (9th Cir.1995)).

23      The Court finds that the First Amended Complaint fails to clearly establish the right at

24  issue here because Dr. Jensen does not particularize it to the specific context of this case.[7] *See*

25

26      [7]  The Ninth Circuit has held that in some rare cases, a constitutional right at issue may be defined by

27  a standard that is so obvious that no case on point is required to clearly establish the right. *Jessop
   v. City of Fresno*, 936 F.3d 937, 942 (9th Cir. 2019) (quotation and citation omitted). This is no
   such case. Moreover, courts in the Ninth Circuit are "hesitant" to find a clearly established right

28  "without a body of relevant case law." *Sharp v. County of Orange*, 871 F.3d 901, 911–12 (9th Cir.
   2017).

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (concluding that plaintiff failed to clearly establish the relevant constitutional right because it was described "at too high a level of generality" and, as such, "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." (citation omitted)).

Dr. Jensen "must point to prior case law that articulates a constitutional rule specific enough to alert" the officials alleged of misconduct "that their particular conduct was unlawful." *Hyde v. City of Willcox,* 23 F.4th 863, 869 (9th Cir. 2022) (quotation and citation omitted). The Court is unpersuaded by Dr. Jensen's argument that citing *Demers* clearly established the right at issue. In *Demers*, the Ninth Circuit applied the general rule established in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), to speech as academic teaching and writing for the first time.[8] *Demers*, 746 F.3d at 417. *Demers* concluded that a professor's academic teaching and writing may be an exception to *Garcetti*'s general rule, but ultimately held that the defendants were entitled to qualified immunity because the plaintiff had not shown that "the contours of the right" were so "sufficiently clear" that "every reasonable official would have understood" their conduct violated that right. *Id*. at 417–18. In other words, the only case Dr Jensen cites to clearly establish and particularize the alleged right at issue in the present case is a case in which the Ninth Circuit concluded that right was not clearly established. *Id*. Any argument Dr. Jensen poses that he included *Demers* to invoke the academic writing and teaching exception is unavailing. Not once does Dr. Jensen reference the exception in the First Amended Complaint. As pled, Dr. Jensen's First Amended Complaint fails to make the contours of the right sufficiently clear so that every reasonable official under these circumstances would understand their conduct violated the right.

For these reasons, the Court finds that Dr. Jensen has failed to clearly establish the alleged right at issue; he defines the right too generally and fails to provide case law that clearly establishes the contours of the specific right particularized to this case. *See D.C. v. Wesby*, 583 U.S. 48, 63 (2018) ("[i]t is not enough that the [right] is suggested by then-existing precedent."). The

---

[8]   The general rule from *Garcetti* is that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

1    Administrators, as individuals, are afforded qualified immunity as to Dr. Jensen's second cause of

2    action. Accordingly, the Court dismisses this cause of action.

3             2.    <u>The Court dismisses Dr. Jensen's fourth cause of action against Dr. Brown,
                    President Hilgersom, and Dean Flesher as individuals on the basis of
4                   qualified immunity because the alleged facts do not show their conduct
                    violated the Due Process Clause.</u>
5

6             Listed as the fourth cause of action in the First Amended Complaint, Dr. Jensen alleges

7    that Dr. Brown, President Hilgersom, and Dean Flesher violated his procedural due process rights

8    under 42 U.S.C. § 1983. ECF No. 8 at 16. In their motion to dismiss, Dr. Brown, President

9    Hilgersom, and Dean Flesher argue that this claim should be dismissed based on qualified

10   immunity because Dr. Jensen fails to provide facts that show their conduct violated a constitutional

11   right. ECF No. 21 at 21, 22. In response, Dr. Jensen argues that he adequately pled the

12   Administrators denied him procedural due process. ECF No. 33 at 17–19.

13            The parties agree that a "section 1983 claim based upon procedural due process ... has three

14   elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the

15   interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th

16   Cir. 2022) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

17   Combining the first two elements, the "procedural due process rights of the Fourteenth

18   Amendment apply only when there is a deprivation of a constitutionally protected liberty or

19   property interest." *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 373 (9th Cir. 1999) (citing *Bd. of*

20   *Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972)). Dr. Jensen expressly claims three

21   protected liberty interests were deprived in the First Amended Complaint: (1) avoiding

22   termination, including by a biased hearing panel; (2) Dr. Jensen's good name, reputation, honor,

23   and integrity; and (3) future employment opportunities. [9] ECF No. 8 at 21.

24

25            [9]    In his opposition response, Dr. Jensen attempts to allege additional "property interests" to his
             procedural due process claim including "academic freedom, right to maintain standards of
26           curriculum, right to have the processes for faculty terminations followed, and right to not be charges
             with insubordination for distributing handouts." ECF No. 33 at 18. While Dr. Jensen points to
27           instances in the First Amended Complaint in which such subjects are loosely referred, the Court
             finds that none of them are expressly alleged as property interests as to his procedural due process
28           claim. As such, they are disregarded for the analysis of this claim.

As to a protected liberty interest in avoiding termination, a government employee generally has a constitutionally protected property interest in continued employment. *Portman*, 995 F.2d at 904. Here, the only inference that can be made from the facts alleged is that Dr. Jensen avoided termination and that he was never dismissed by TMCC. In fact, Dr. Jensen admits he is still, and was at all relevant times, employed as a professor by TMCC. ECF No. 8 at 4. There is no light in which the Court may view the First Amended Complaint as plausibly alleging a deprivation of his protected liberty interest in employment as a government employee because he remains a government employee. Any argument that Dr. Brown, President Hilgersom, and Dean Flesher deprived him of an employment related interest protected by the Due Process Clause is plainly unsupported.

As to protected liberty interests in his good name, reputation, honor, and integrity, harm to one's reputation alone is not considered a liberty or property interest guaranteed against state deprivation without due process of law. *Paul v. Davis*, 424 U.S. 693, 712 (1976). In *Paul*, the plaintiff claimed when officials disseminated flyers to merchants identifying him as an "active shoplifter" with a photo, the police deprived him of protected interests in his reputation. *Id*. at 695–97. The Supreme Court reversed the court of appeals and held that the plaintiff did not state a claim for violation of his procedural due process rights because, without more, reputational damage does not deprive a person of any liberty or property interests protected by the Due Process Clause. *Id*. at 711–12. Again, Dr. Jensen was not terminated so there is nothing more here than reputational damage. Without more, these are not damages that implicate the type of liberty or property interests protected by the Due Process Clause.

As to a protected liberty interest in future employment opportunities, there is a protected liberty interest that "encompasses an individual's freedom to work and earn a living." *Portman*, 995 F.2d at 907. "[W]hen the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Id*. (quotation omitted). "To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." *Id*. (quoting *Bollow v. Federal*

*Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir.1981), cert. denied, 455 U.S. 948 (1982). "Charges that carry the stigma of moral turpitude such as dishonesty or immorality may implicate a liberty interest, but charges of incompetence or inability to get along with others do not." *Portman*, 995 F.2d at 907.

The Court finds that the First Amended Complaint alleges no facts that make a deprivation of "future employment opportunities" plausible. First, and of utmost importance in this case, the charges underlying the disciplinary investigation and hearing did not result in a termination or dismissal from employment. Second, even if the charges resulted in dismissal—something the Court does not find—they are not the type of charges that carry the stigma of moral turpitude such as dishonesty or immorality that implicate a protected liberty interest under the Due Process Clause. Dr. Jensen alleges that "insubordination" formed the basis of his letter of reprimand and eventual disciplinary investigation and hearing. The actual letter of reprimand describes Dr. Jensen's "insubordination" as unprofessional, disrespectful, and disruptive conduct. ECF No. 21-2 at 2. The Ninth Circuit has concluded that insubordination charges are not charges of moral turpitude that deprive a person of their protected liberty. *See Gray v. Union Cnty. Intermediate Educ. Dist*., 520 F.2d 803, 805–06 (9th Cir. 1975) (holding that, amongst other things, a letter charging the appellant with insubordination and hostility towards others did not deprive the appellant of a protected liberty because such charges do not import serious character defects like dishonesty or immorality). Moreover, any argument that Dr. Jensen's protected liberty interest in "future employment opportunities" has been deprived here is harshly undermined by the fact that (1) he provides no instances in which he was denied employment, and (2) he remains employed by TMCC.

For these reasons, the Court finds that Dr. Brown, President Hilgersom, and Dean Flesher are afforded qualified immunity because Dr. Jensen has failed to establish a constitutional violation with regard to his claim for a procedural due process violation. Accordingly, the Court dismisses this claim with prejudice.[10] *See Krainski*, 616 F.3d at 971 (affirming the district court's dismissal

---

[10]   Dismissal of this claim is further supported by the fact that Dr. Jensen inadequately alleges lack of process. For example, as alleged in the First Amended Complaint, Dr. Jensen implies that the notice he received was not "reasonable," not that there was a lack of notice. Furthermore, the alleged facts

of student's procedural due process claim because allegations of a damaged reputation and tarnished educational transcript, without more, did not amount to a deprivation of her constitutionally protected liberties or property interests).

3. <u>The Court dismisses Dr. Jensen's sixth cause of action against the Administrators as individuals on the basis of qualified immunity because the facts alleged do not show their conduct violated the Equal Protection Clause.</u>

Listed as the sixth cause of action in the First Amended Complaint, Dr. Jensen alleges that the Administrators violated the Equal Protection Clause pursuant to 42 U.S.C. § 1983. ECF No. 8 at 23. In their motion, the Administrators argue that this claim should be dismissed because (1) no facts alleged show their conduct violated constitutional equal protection rights, and (2) Dr. Jensen fails to allege facts identifying the protected class at issue. ECF No. 21 at 22. Dr. Jensen claims that he has adequately pled that the Administrators are personally liable for violating his Fourteenth Amendment rights. ECF No. 33 at 21. In reply, the Administrators also point out that Dr. Jensen may not bring a "class-of-one" claim in a public employment context. ECF No. 34 at 9.

The Fourteenth Amendment's Equal Protection Clause demands that that all persons similarly situated should be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir.2008). "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022). To state a claim "under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998)).

---

make clear that Dr. Jensen believes the disciplinary hearing was "biased," not that there was no hearing. Clearly then, Dr. Jensen received some notice and a hearing, both of which did not result in a loss of his employment.

The preliminary step in an equal protection analysis is for the plaintiff "to identify the [defendant's asserted] classification of groups.'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005) (quoting and citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir.1995) (citation omitted)). "An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." *Thornton*, 425 F.3d at 1167 (quotation and citation omitted).

In the First Amended Complaint, Dr. Jensen makes no outright reference to the protected class of which he purports to be a member. Instead, Dr. Jensen offers a scarce number of conclusory statements that he was "treated differently than similarly situated Professors" and that he was "evaluated differently from other faculty."[11] ECF No. 8 at 24, 12.  Two sweeping and conclusory statements, even when viewed favorably, amount to nothing more than "conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." See *Thornton*, 425 F.3d at 1167 (quotation and citation omitted).

For this reason, the Court finds that qualified immunity applies to the Administrators as individuals here because Dr. Jensen has failed to allege a constitutional violation of the Equal Protection Clause. Accordingly, the Court dismisses this claim. *See Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir.1997) ("[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." (citation and internal quotation marks omitted)).

## C.      Dr. Jensen's Pendent State Law Claims

Dr. Jensen brings supplemental Nevada Constitutional claims against the Administrators in both their official and individual capacities. *See* ECF No. 8 at 18–24. The Administrators provide a litany of reasons for dismissal of the state law claims. ECF No. 21 at 22, 23.

---

[11]    The Court does not believe Dr. Jensen purports to bring his Equal Protection Clause claim against the individual Administrators under a "class-of-one" theory. To the extent that this may be true, however, it is not persuasive. An equal protection claim based on class-of-one theory "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605 (2008). However, the Supreme Court has held that the class-of-one theory of equal protection has "no application in the public employment context." *Id*. Thus, a class-of-one theory here is not viable.

In *Pennhurst State Sch. & Hosp. v. Halderman* (*Pennhurst II*), the Supreme Court held that state law claims brought into federal court under pendent jurisdiction are subject to Eleventh Amendment immunity where the claims allege that state officials violated state law in carrying out their official responsibilities. 465 U.S. 89, 121 (1984). The Ninth Circuit echoes this finding. *See Ulaleo v. Paty*, 902 F.2d 1395, 1400 (9th Cir. 1990) (reasoning that plaintiff's pendent state law claims were rightfully dismissed because hearing them in federal court would "offend federalism and [would] not further the interests of federal law, the justification for the *Ex parte Young* exception to the eleventh amendment.").

In this Order, the Court has dismissed Dr. Jensen's constitutional claims on the basis of Eleventh Amendment immunity and the asserted defense of qualified immunity. Only, state law claims against the Administrators remain. The Court dismisses the pendent state law claims against the Administrators in their official capacities due to Eleventh Amendment immunity and those against the Administrators in their individual capacities on pendent jurisdiction grounds. Accordingly, the Court dismisses Dr. Jensen's pendent state law claims against the Administrators.

### D.    Dr. Jensen's Declaratory Relief Claim

In this Order, the Court has dismissed Dr. Jensen's constitutional claims against the Administrators in their official capacities on the basis of Eleventh Amendment immunity. *See* Eleventh Amendment Immunity discussion *supra* Section III.A. The Court has also dismissed Dr. Jensen's constitutional claims against the individual Administrators based on the asserted defense of qualified immunity. *See* Qualified Immunity Defense discussion *supra* Section III.B.1,2,3. And finally, the Court has dismissed Dr. Jensen's state law claims based on Eleventh Amendment immunity and pendent jurisdiction. *See* Dr. Jensen's Pendent State Law Claims discussion *supra* Section III.C.

Declaratory relief is not a standalone claim. *See* 28 U.S.C. §§ 2201, 2202; *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court" and "[i]t only permits the district court to adopt a specific remedy when jurisdiction exists."). When all of a plaintiff's "substantive claims have been dismissed, plaintiff's claim for declaratory relief will be dismissed as well." *Zappia v.*

*World Sav. F.S.B.*, Case No. 14-CV-1428-WQH-DHB, 2015 WL 9473641, at *10 (S.D. Cal. Dec. 28, 2015) (citing *Mayen v. Bank of Am., N.A.*, Case No. 14-CV-03757, 2015 WL 179541, at *5 (N.D. Cal. Jan. 14, 2015) ("The Court also agrees that, because Plaintiff's complaint will be dismissed in its entirety, no viable cause of action remains to support Plaintiff's request for declaratory relief. Plaintiff's declaratory relief claim must be dismissed.")). Because the Court dismisses all Dr. Jensen's substantive claims, the Court finds that no viable causes of action remain to support his declaratory relief requests. Accordingly, the Court dismisses this claim.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that the Administrators' motion to dismiss is (ECF No. 21) is **GRANTED**. Dr. Jensen's constitutional claims against the Administrators in their official capacities are dismissed with prejudice based on Eleventh Amendment immunity. Dr. Jensen's constitutional claims against the Administrators in their individual capacities are dismissed based on the Administrators' asserted qualified immunity defense. Dr. Jensen's pendent state law claims against the Administrators, in both capacities, are dismissed without prejudice to Dr. Jensen's right to allege them in state court on Eleventh Amendment immunity and pendent jurisdiction grounds. While Eleventh Amendment immunity and qualified immunity do not bar Dr. Jensen's claims for declaratory and injunctive relief, the Court dismisses Dr. Jensen's claim for declaratory relief because all other substantive causes of action are dismissed.

IT IS FURTHER ORDERED that Dr. Jensen's motion to amend (ECF No. 44) is **DENIED as moo**t.

IT IS FURTHER ORDERED that the Clerk of the court shall enter judgment accordingly and close this case.

IT IS SO ORDERED.

DATED this 27th day of September, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE